UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE BAYOU HEDGE FUND INVESTMENT LITIGATION | 06 MD 1755 (cm) |
| THIS DOCUMENT RELATES TO: | |
| SOUTH CHERRY STREET, LLC, <br><br> Plaintiff, <br><br> -against- <br><br> HENNESSEE GROUP LLC, ELIZABETH LEE HENNESSEE and CHARLES A. GRADANTE, <br><br> Defendants. | 06 CV-02943 (CM) |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO COMPEL ARBITRATION**

Ted Poretz
**BINGHAM McCUTCHEN LLP**
399 Park Avenue
New York, New York 10022
(212) 705-7000

*Attorneys for Plaintiff*

## TABLE OF CONTENTS

Page

INTRODUCTION ..................................................................................................................1

SUMMARY OF RELEVANT FACTS .................................................................................1

ARGUMENT..........................................................................................................................4

    1. Defendants Have Not Met Their Burden of Demonstrating that the Arbitration Provision is Enforceable as Against South Cherry................................................4

    2. South Cherry Is Not Bound by the Agreement Entered Into Between Hennessee Group and Bollman ...............................................................................................5

    3. There is No Evidence that Bollman's "Agency" Extended to Binding South Cherry to an Arbitration Provision .........................................................................6

    4. The Federal Arbitration Act Does Not Compel Arbitration of South Cherry's Claims.....................................................................................................................7

    5. South Cherry Never Agreed to Arbitrate Disputes with Gradante and Hennessee ...............................................................................................................8

CONCLUSION ......................................................................................................................8

# TABLE OF AUTHORITIES

## FEDERAL CASES

Page

*Matter of Arbitration Between Keystone Shipping Co. and Texport Oil Co.*, 782 F. Supp. 28 (S.D.N.Y. 1992) ...................................................................................4

*Beck v. Suro Textiles, Ltd.*, 612 F. Supp. 1193 (S.D.N.Y. 1985) .......................................7

*Kurz v. Chase Manhattan Bank*, 319 F. Supp. 2d 457 (S.D.N.Y. 2004) ..............................4

*Lumbermens Mutual Casualty Co. v. Franey Muha Alliant Insurance Services*, 388 F. Supp. 292 (S.D.N.Y. 2005) ...................................................................................6

  *Id.* at 302 ...........................................................................................................................6

*McAllister Brothers, Inc. v. A&S Transport Co.*, 621 F.2d 519 (2d Cir. 1980) ..................4

*Moses H. Cone Mem'l Hospital v. Mercury Construction Corp.*, 460 U.S. 1 (1983)..................................................................................................................................7

*See EEOC v. Waffle House, Inc.*, 534 U.S. 279 (2002) ......................................................8

*United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574 (1960) ..................4

  *id.* at 11) -- ........................................................................................................................5

  *Id.* at 13 .............................................................................................................................5

  *Id.* at 2-16 .........................................................................................................................5

## STATE CASES

*Chaitman v. Wolf, Haldenstein, Adler, Freeman & Hertz, LLP*, No. 03 CI. 929, 2004 WL. 2471372 (S.D.N.Y. Nov. 3, 2004)..................................................................8

## INTRODUCTION

Defendants Hennessee Group LLC ("Hennessee Group") and its principals Elizabeth Lee Hennesse ("Hennessee") and Charles Gradante ("Gradante") (collectively, "Defendants") move to compel plaintiff South Cherry Street LLC ("South Cherry") to arbitrate this dispute based on an arbitration clause that South Cherry, Gradante and Hennessee never signed. In seeking to enforce a non-existent arbitration provision, Defendants do little more than attach an Investment Advisory Agreement (the "Agreement") that Hennessee Group signed with Craig Bollman ("Bollman") and assert that because the Complaint describes Bollman as an "agent" for South Cherry, Bollman's signature necessarily binds South Cherry to its terms. But in resting their entire argument on one word in the Complaint, Defendants skip over an important step, the lack of any evidence that Bollman signed the Agreement on behalf of South Cherry. All evidence is to the contrary.

In fact, the Agreement itself, and the exhibits that are part of the Agreement, conclusively demonstrate that Bollman executed the Agreement only in his own capacity, and not as agent for South Cherry. That is consistent with the accompanying declaration of South Cherry's principal, Fred Groothuis (the "Groothuis Decl."), which establishes a) that Bollman has never had any ownership interest in South Cherry (Groothuis Decl. ¶ 3) and b) that Hennessee Group always recognized that Groothuis spoke for South Cherry (*id.* ¶ 5).

## SUMMARY OF RELEVANT FACTS

Hennessee Group is a registered investment advisor and hedge fund consulting firm. It is by its nature a sophisticated business enterprise, and advertises that it pioneered the field. At all relevant times, Hennessee Group's clients invested more than one billion dollars in hedge funds Hennessee Group recommended. (*See* Hennessee Group's Form ADV, Exhibit A to the

1

accompanying Affidavit of Ted Poretz, Esq.) Hedge fund investments are targeted to high net worth individuals and institutions.

Hennessee Group opened an account with Bollman when he executed the Agreement on or about August 4, 2001. Pursuant to the Agreement -- which appears to be Hennessee Group's standard, pre-printed form of agreement -- Hennessee Group agreed to provide certain specified investment advisory services to Bollman and "all other entities, that may invest in hedge funds, for which Mr. Craig Bollman is authorized…to retain Hennessee and to make investments in hedge funds (collectively 'Client')." (Gradante Decl. Ex. A at 1.) South Cherry is mentioned nowhere in the agreement, which is signed only by Bollman, but Defendants make a logical leap when they assume that because Bollman is described in the Complaint as South Cherry's agent for a certain purpose, his signature necessarily binds South Cherry to the Agreement.

There is no evidence to support this proposition, and a great deal of evidence to the contrary. First, it is undisputed that South Cherry never executed an investment advisory agreement with Hennessee Group. Second, it should be undisputed that South Cherry was owned by Groothuis, who similarly never executed an investment advisory agreement with Hennessee Group in any capacity. Hennessee Group chose to advise South Cherry on prospective hedge fund investments without having obtained any kind of investment advisory agreement with South Cherry or Groothuis, its principal.

Third, a review of the Agreement and its several annexed exhibits make clear that the Agreement Bollman signed was only for himself, not South Cherry. Among other things:

- Section XIX of the Agreement (entitled "Agreement Execution," Gradante Decl. Ex. A at 9) asks the signatory to provide the "Name of Client." It provides that the Client is "Craig M. Bollman, Jr." and says nothing about South Cherry or any

other entity. Hennessee Group could easily have asked Bollman to identify the other entities, if any, on whose behalf he was ostensibly signing the Agreement. It did not do this.

- Exhibit B to the Agreement (entitled "Accredited Investor Status," *id.* at 11) is a questionnaire that lists the various corporate capacities a new client's endorsement could signify. It asks the client to "initial the appropriate items that apply to Client." Bollman checked two of the twelve definitions included on the questionnaire, <u>both of which apply only to an individual</u>, not to any other corporate capacity.[1]

- Exhibit C, an "Accredited Investor Profile," poses a series of additional questions. The first one asks Bollman whether he would be investing on his own behalf or for an entity. He checked "Yourself." (*Id.* at 13.) It asked him if he was the sole decision maker, or whether (as would be the case for a corporate entity) there might be a process in place to determine the entity's investments. Bollman wrote that he was the "sole decision maker." (*Id.*) The remainder of Bollman's answers to the Accredited Investor Profile are consistent with Bollman answering only in his own capacity, and not as agent for any other person or entity.

The Court's attention is also called to the Groothuis Decl., which establishes that Groothuis is -- and has always been -- the sole owner of all legal and beneficial interest in South Cherry (and its member), and that Hennessee Group has always recognized this. (Groothuis

---

[1] One of the choices Bollman did not select was the last one, a catch-all for corporate entities "in which all of the equity owners or partners are "accredited investors." While accredited investor status is generally required for a hedge fund investor, the Groothuis Declaration establishes that Bollman has never been an equity owner of South Cherry, or its managing member.

-3-

Decl. ¶¶ 3, 5.) Indeed, when the Bayou Management ("Bayou") hedge fund scandal first erupted in Summer 2005, Hennessee Group solicited South Cherry and Groothuis to bring an action, at Hennessee Group's sole expense and using attorneys selected by Hennessee Group, for the purpose of freezing Bayou's assets. Hennessee Group succeeded in persuading Groothuis, on South Cherry's behalf, to submit an affidavit in support of the asset freeze application. (*Id.* ¶ 6.)

## ARGUMENT

### 1. Defendants Have Not Met Their Burden of Demonstrating that the Arbitration Provision is Enforceable as Against South Cherry

It is black letter law that a party moving to compel arbitration must establish, among other things, "that (1) an arbitration agreement exists…" between the parties. *Matter of Arbitration Between Keystone Shipping Co. and Texport Oil Co.*, 782 F Supp. 28, 30 (S.D.N.Y. 1992); *see also Kurz v. Chase Manhattan Bank,* 319 F.Supp.2d 457, 461 (S.D.N.Y. 2004). These decisions recognize the fundamental principal that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not so agreed to submit." *McAllister Bros., Inc. v. A&S Transp. Co.*, 621 F.2d. 519, 522 (2d Cir. 1980) (quoting *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)).

Hennessee Group and its principals have fallen far short of even this minimal standard. It has offered no evidence that South Cherry ever entered into an arbitration agreement of any kind. By contrast, South Cherry has shown, both by the Groothuis Decl. and a review of the Agreement itself, that South Cherry is not a party to any agreement to arbitrate. Under these circumstances, Bollman's signature on the Agreement is irrelevant to South Cherry, and is no evidence that South Cherry agreed to arbitrate a dispute with Hennessee Group. It is not enough for Hennessee Group simply to call Bollman an "agent."

Hennessee Group is a large and sophisticated institution which managed well more than

one billion dollars. Hennessee Group could easily have asked South Cherry to execute an investment advisory agreement, but it did not. Instead, it chose to do business with South Cherry without any form of signed agreement -- certainly its right -- and it did so at its own risk. It cannot now enforce an arbitration provision in an agreement that South Cherry did not sign, and that it did not ask South Cherry to sign, merely because a person who maintained an agency relationship with South Cherry for some purpose separately opened a Hennessee Group account in his own capacity.

### 2.    South Cherry Is Not Bound by the Agreement Entered Into Between Hennessee Group and Bollman.

The Agreement and its annexations repeatedly make clear that Bollman's signature on the Agreement was in his own capacity, not pursuant to some agency relationship he maintained with South Cherry for purposes other than these. The result urged by Defendants not only does violence to the plain text of the Agreement, but forces upon South Cherry the terms of a contract to which it was not a party. Since arbitration is entirely a creature of contract, the absence of a contract to arbitrate between Hennessee Group and South Cherry is fatal to this motion.

The Agreement could not indicate any more clearly that Bollman entered the Agreement in an individual capacity. As set forth above, Bollman is listed as Hennessee Group's "Client" in Section XIX of the Agreement, and the reference to him as the "Client" makes no relationship to any agency relationship. In Exhibit B to the Agreement, Bollman twice indicates that the "*Client*" (emphasis added) is "[a]n individual" (*id.* at 11) -- not a corporate entity -- and in Exhibit C to the Agreement, Bollman indicates that he will be "investing on behalf of...[him]self." (*Id.* at 13.) Even the Agreement's header (which appears at the top of every page but the first) indicates that it is an "Agreement Between Hennessee Group LLC; And Mr. Craig Bollman. ('*Client*')." (*Id.* at 2-16, emphasis added).

In light of the Agreement's repeated and explicit confirmations that Bollman, in his individual capacity, is the "Client" bound by its terms, it is clear that the mere fact that Bollman entered into the Agreement in his individual capacity is irrelevant to South Cherry. Defendants simply have no right to assume, in the absence of any supporting contractual language, that Bollman's signature has anything to do with South Cherry's right to litigate. The fact that the standard pre-printed language of the Agreement refers to "all other entities that may invest in hedge funds for which ... Bollman is authorized under the terms of any applicable plan, trust, partnership agreement or other governing instrument...to retain Hennessee..." adds nothing in the absence of any evidence that any such entities actually exist.

### 3. There is No Evidence that Bollman's "Agency" Extended to Binding South Cherry to an Arbitration Provision

Defendants rely heavily on the assertion that when Bollman first contacted Hennessee Group, he did so in his capacity as an agent of South Cherry. That assertion does not come from the Agreement, but from one word -- the word "agent" in the Complaint. But without more -- and there is no more -- the fact that Bollman can be described as an agent of South Cherry for certain purposes does not establish that he was an agent for all purposes. *Lumbermens Mut. Cas. Co. v. Franey Muha Alliant Ins. Servs.*, 388 F.Supp. 292, 302 (S.D.N.Y. 2005) ("A party can be a principal's agent with respect to certain transactions, and merely a broker with respect to others."). The Complaint's description of Bollman as an "agent" of South Cherry does not establish that Bollman entered into the Agreement as an agent of South Cherry. *Id.* at 302 (stating that under New York law, "use of the term 'agent' is not conclusive as to whether an agency relationship existed" between parties during the relevant period). Whether Bollman's initial contact with Hennessee Group was made on his own or on South Cherry's behalf, the

-6-

Agreement itself makes clear that it was signed by Bollman in his individual capacity and for himself, not as an agent for South Cherry.

This Court has held that "[w]here a contract is signed by an agent who does not indicate therein that he is signing as an agent on behalf of a disclosed principal, the agent is deemed to be contracting on his own behalf." *Beck v. Suro Textiles, Ltd.*, 612 F.Supp. 1193, 1194 (S.D.N.Y. 1985). The Agreement fails even to hint that Bollman executed it as South Cherry's agent, and instead contains powerful reason to believe that he did not. If there were any question about this, Hennessee Group, a large and sophisticated investment advisor whose pre-printed form was used, was more than capable of clarifying the matter. It could have inserted South Cherry's name somewhere in the agreement, but did not. It could have asked South Cherry to execute a separate agreement, but did not. Without taking these rudimentary steps to obtain an arbitration agreement from its client, Hennessee Group (an investment advisor and therefore a fiduciary) simply cannot seek to compel arbitration without clear evidence that South Cherry agreed to arbitrate any dispute, let alone this one.

### 4. The Federal Arbitration Act Does Not Compel Arbitration of South Cherry's Claims

Defendants are correct to point out that in 1983, the United States Supreme Court interpreted the Federal Arbitration Act as "establish[ing] that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). This is not a case, however, where the parties dispute the scope of issues subject to arbitration; if South Cherry had signed or otherwise subscribed to the Agreement, there would be little question but that this dispute would be arbitrable.

The rule Defendants recite is no substitute for the bedrock requirement that the party must first have agreed to the arbitration of *something*. Here, there is no evidence that South Cherry agreed to arbitrate *anything*, and absent proof that there is some kind of arbitration provision in existence, there is simply no public policy in favor of arbitration. The "plain text of the contract" does not help Hennessee Group here in the absence of evidence that South Cherry signed or otherwise subscribed to it simply because of the policy favoring arbitration. *See EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002) (stating that "plain text of the contract" should not be overridden, "simply because the policy favoring arbitration is implicated").

### 5. South Cherry Never Agreed to Arbitrate Disputes with Gradante and Hennessee

The case law cited in Defendants' memorandum for the proposition that Gradante and Hennessee are bound to the Agreement as agents of Hennessee Group (which they admittedly control) misses the point entirely. If South Cherry is not bound to arbitrate disputes with Hennessee Group, it should be even more clear that it cannot be bound to arbitrate disputes with its principals. The well-accepted principle Defendants argue, that a plaintiff-signatory is "estopped from avoiding arbitration with a [nonsignatory] when the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed," *Chaitman v. Wolf, Haldenstein, Adler, Freeman & Hertz, LLP*, No. 03 CI. 929, 2004 WL 2471372, *4 (S.D.N.Y. Nov. 3, 2004), does not speak to today's issue, where non-signatories seek to enforce an arbitration provision against other non-signatories.

### CONCLUSION

There is absolutely no evidence that the Agreement signed by Bollman compels South Cherry to arbitrate this dispute. There is no evidence that South Cherry ever agreed to arbitrate

-8-

any dispute with Hennessee Group. The motion to compel arbitration should accordingly be denied.

Dated:   New York, New York.
         June 30, 2006

                                          BINGHAM McCUTCHEN LLP

                                          By: /s/ Ted Poretz
                                              Ted Poretz (TP 5387)
                                              399 Park Avenue
                                              New York, NY  10022-4689
                                              (212) 705-7000

                                          *Attorneys for Plaintiff*