BRIAN F. AMERY*
LAWRENCE D. ROSS*
DAVID W. REGER*
RICHARD V. JONES*
MARK T. MCHENAMY*
DAVID P. SCHNEIDER*
MARK M. TALLMADGE*
EDWIN A. ZIFF*
GEORGE R. HIRSCH*
CYNTHIA J. BORRELLI DODGE*
ERIC L. CHASE*
DAVID H. PIKUS*
JORDAN S. WEITBERG*
DAVID J. LIBOWSKY*
DONALD J. CAMERSON, II*
DAVID F. BAUMAN*
DOMINICK F. EVANGELISTA*
GENEVIEVE K. LAROBARDIER*
NANCY C. McDONALD*
LAWRENCE E. FENSTER*
SAMUEL J. THOMAS*
LINDA S. MIRSKY BRENNEMAN*
DIANA C. MANNING*
BENNETT FALK*
KEITH OLIND
ALEX J. SABO□
FRANK J. CUCCIO*
ANDREW W. SIOMAN◊
RICHARD C. SZUCH*
JED L. MARCUS*
RONNIE ANN POWELL*
PAUL I. ROSENBERG*

OF COUNSEL
RICHARD R. SPENCER, JR.*

COUNSEL
KENNETH M. MOLTNER*
MICHAEL J. CONNOLLY*
FELICIA L. GARLAND*

BERNARD BRESSLER
(1926-2000)

# BRESSLER, AMERY & ROSS, P.C.
## ATTORNEYS AT LAW

17 STATE STREET
NEW YORK, NY 10004
(212) 425-9300
FAX: (212) 425-9337

www.bressler.com

NEW JERSEY OFFICE
325 COLUMBIA TURNPIKE
FLORHAM PARK, NJ 07932
(973) 514-1200

FLORIDA OFFICE
HUNTINGTON CENTRE II
2801 S.W. 149TH AVENUE
MIRAMAR, FL 33027
(954) 499-7979

DANIEL R. KORB, JR.+
RICHARD J. TEER*
MICHAEL B. RUBIN†
MICHAEL A. COLODNEY*
KIRSTEN McGAW GROSSMAN*
KAREN E. MURPHY◊
MATTHEW C. PLANT*
KALMAN G. MAGYAR*
JILL E. OOKSONG
ROBIN C. STEPHAN*
CHRISTIAN D JOHNSON*
STEVEN G. HEMMERT□
RONALD J CAMPIONE*
ANGELA M. SCAFURI*
SEAN C CALLAHAN*
DENNISE S. MULVIHILL*
COREN H. STERN□
SETH V. ALHADEFF□
JASON L SMITH*
DAVID J BUTLER*
BENJAMIN J DILORENZO*
DIANA C. CAMPBELL◊
DAVID G. SMITHAM*
YOONSUN CHUNG*
NIKOLAS S KOMYATI*
DENNIS E. KADIAN*
EDWARD O. TAN†
A. WESLEY BRIDGES*
REGINA PEPE MARTORANA*
DIANA M HEDRICK□
CHRISTOPHER G. MASSEY*
JACQUELYN R. TRUBSELL*
SMIT KAPADIA*
MATTHEW E. WOLPER□
RISA M. DAVID*
ANDREW M GREENIDGE□
KIRSTIN K. O'CALLAGHAN*

*ADMITTED IN NJ AND NY
†ADMITTED IN NJ
◊ADMITTED IN NY
□ADMITTED IN FL
*ADMITTED IN FL AND NY

WRITER'S DIRECT INFORMATION;

January 30, 2007

**Via Facsimile Only**
(212) 805-6326 and (914) 390-4152
The Honorable Colleen McMahon, U.S.D.J.
United States District Court
Southern District of New York
300 Quarropas Street, Room 533
White Plains, New York 10601-4150

Re: In re Bayou Hedge Fund Litigation, MDL No. 1755

South Cherry Street LLC v. Hennessee Group LLC, Elizabeth Lee Hennessee and Charles A. Gradante,
No.: 06-cv-02943 (CM)

*[Handwritten note: You are incorrect in your assessment. See "★" on next page. Colleen McMahon]*

*[Stamp: MEMO ENDORSED]*

Dear Judge McMahon:

We represent defendants Hennessee Group, LLC, Elizabeth Lee Hennessee and Charles Gradante in the above-referenced proceeding. We are in receipt of Your Honor's January 23, 2007 Order. This letter is in response thereto.

Although the Court correctly restates the holding in Morgan v. Barnhart, 2005 WL 2338709 (S.D.N.Y. 2005), the underlying facts in this case are different from those in Morgan and the cases upon which it relies. In Morgan and the cases cited therein, the Magistrate Judge was apparently charged with and did address the entire motion pending before the District Court. By contrast, in this case, Your Honor referred only a specific issue to Magistrate Fox, not the entirety of Defendants' Motion to Compel Arbitration. Your Honor's August 23, 2006 Order of Reference was thus limited in scope and did not seek to have the Magistrate Judge address the issues presently before Your Honor. The Order states:

831866_1

Copies mailed / handed / faxed to counsel ____/____/____

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED:

January 30, 2007    BRESSLER, AMERY & ROSS, P.C.
Page 2

> I have therefore decided to refer this matter to The Hon. Mark D. Fox, who will conduct a hearing on September 12, 2006 at 9:45 a.m. for the <u>purpose of finding the facts</u> necessary to enable the court to conclude what <u>Bollmans' relationship was to South Cherry</u> and whether South Cherry can fairly be said to have been acting through Bollman in the making of the Investment Advisory Contract. <u>Order of Reference</u> at p. 4 (emphasis added)

The Order further states that:

> I will ask for a report and recommendation (containing findings of fact and conclusions of law concerning the <u>existence or non-existence of, and the scope of, any agency relationship</u> between Bollman and South Cherry) to be delivered to the court by October 18, 2006. <u>Order of Reference</u> at p. 4 (emphasis added)

Magistrate Fox limited his Report and Recommendation accordingly. Magistrate Fox states that:

> This matter was referred to me by your Honor's August 23, 2006 order for a report and recommendation concerning the <u>existence or non-existence of, and the scope of, any agency relationship</u> between South Cherry Street, LLC ("South Cherry") and Craig Bollman." <u>Report</u> at p. 1 (emphasis added)

Magistrate Fox further stated that:

> As directed in your Honor's order of reference, this Court conducted a hearing on September 21, 2006 <u>for the purpose of finding the facts</u> necessary to enable the Court to <u>determine what Bollman's relationship was to South Cherry</u> and whether South Cherry Street can fairly be said to have been acting through Bollman in his execution of the Investment Advisory Agreement ("IAA" or the "agreement"), which contained the arbitration clause at issue. <u>Report</u> at p. 1-2 (emphasis added)

Thus, based on the instructions contained in the Order of Reference, Magistrate Fox's Report did not address the Motion to Compel in total. Magistrate Fox simply determined that "[t]his Court should conclude that South Cherry cannot be bound to the IAA's arbitration clause <u>based on a finding of an agency relationship</u>." <u>Report</u> at p. 13 (emphasis added). Magistrate Fox's conclusion was that "[b]ased on the foregoing, it is respectfully recommended that your Honor find that Bollman was not an authorized agent of South Cherry and lacked authority to bind South Cherry to the IAA, which contained the arbitration clause." <u>Report</u> at p. 13.

831866_1

January 30, 2007  BRESSLER, AMERY & ROSS, P.C.
Page 3

Because Magistrate Fox was never charged with conducting a hearing or issuing a Report and Recommendation on all aspects of Defendants' Motion to Compel, Morgan and the cases cited therein are inapposite. Defendants submit that these cases should not preclude Your Honor from deciding the issues of estoppel or ratification or whether South Cherry retained benefits from Hennessee through Bollman -- the issues currently before the Court.

Further, as the record reveals, there were no "arguments" (closing or otherwise) made before Magistrate Fox on any subject. The closest thing to argument was the opening statements of the parties. In Defendants' opening statement counsel asserted, in part, that:

> And what we intend to put in are -- is evidence showing that all recommendations were made to Mr. Bollman, all presentations were made to Mr. Bollman. See Trans. at p. 4, ln. 16-18.

With the exception of opening statements, the hearing before Magistrate Fox was limited to testimony of witnesses and submission of exhibits. In addition, no conferences (with the exception of a telephone conference on the issue of scheduling) were held with the Court.

Despite the fact that Magistrate Fox was not charged with deciding the issues of ratification or estoppel, the testimony given at the hearing certainly supports such a finding. Groothuis was not present at the August 27, 2001 meeting with Hennessee Group, see Trans. at p. 43, ln. 3-5 and 8 – 14, and was aware that the August 27, 2001 presentation was for Bollman based on Bollman's investment objectives, assets and risk tolerance, see Trans. at p. 43, ln. 15 – p. 44, ln. 2 and 14 – 18. Groothuis confirmed that the recommendations made by Hennessee Group in the August 27, 2001 presentation were made to Bollman. See p. 47, ln. 16 – 18. Bollman testified that he ". . . came away from that [August 27, 2001] meeting with investment ideas that were later provided to South Cherry Street, LLC." See Trans. at p. 43, ln. 11 – 14. Plaintiff also specifically referenced the August 27, 2001 presentation and even quoted sections of it in the Complaint. See Complaint ¶ 22 – 23.

In fact, even Magistrate Fox, having heard and evaluated the testimony, concluded that:

> He [Bollman] discussed hedge fund investments with South Cherry and disclosed to Groothius the investment recommendations made by Hennessee, See id. at 116-17. South Cherry ultimately made investments in the following hedge funds recommended by Hennessee: West Broadway Partners, Cobalt Partners, Bricoleur Partners II, and Bayou Accredited Fund. See id. at 22, 30. Report at p. 5

It is worth noting that, while Bollman's sharing of Hennessee's investment advice with Groothius and South Cherry may have violated the non-disclosure of proprietary information provision of the IAA, see Ex. O at p. 10, there is no question that all of the fees

831866_1

January 30, 2007      BRESSLER, AMERY & ROSS, P.C.
Page 4

to which Hennessee was entitled due to purchases made by South Cherry were paid, *see* Tr. at 154." Report at p. 5-6

While Bollman made many recommendations to Groothius based on advice he had received from Hennessee, which may very well constitute a breach of the IAA's non disclosure provision, it is undisputed that Groothius was the sole decision-maker with respect to South Cherry's investments. Report at p. 11-12

Thus, the evidence presented and Magistrate Fox's Findings of Fact plainly supports the conclusion that Plaintiff retained benefits, having received recommendations of hedge funds (that were subsequently purchased by Plaintiff) from Hennessee through Bollman such as those in the August 27, 2001 presentation.

Your Honor also inquired regarding Groothuis' knowledge of the arbitration clause contained in Bollman's Investment Advisory Agreement and whether Groothuis was aware that Bollman signed such Agreement. At the hearing, Groothuis expressly stated that he had seen an unsigned copy of that Agreement and had reviewed a copy of it. *See* Trans. at p. 21, ln. 13 – 15 and p. 36, ln. 14 - 17. Groothuis did not testify that his review of the Agreement was limited in any way. Therefore, the only plausible conclusion that can be reached is that Groothuis reviewed the entire agreement, including the arbitration clause. It is certainly indisputable that Groothuis was aware that Bollman had signed a written Investment Advisory Agreement with Hennessee Group, *see* Trans. at p. 21. ln. 9 – 12, p. 30, ln. 25 – p. 31, ln. 4 and p. 27, ln. 8 – 9. Magistrate Fox concluded that "Groothius was aware of the existence of the written IAA and he saw an unsigned copy, but never a signed copy. *See id.* at 21." Report at p. 5.

Lastly, Defendants note Your Honor's "[g]reat interest [in] seeing evidence about exactly what sort of *enforceable* contract, with sufficiently definite terms, South Cherry entered into with the Hennessee Group." In fact, Mr. Groothuis' testimony on this issue is very much on point. The following appears on page 55 of the Transcript:

    Q    Okay. And that took place in your conversation regarding your agreement with her [Ms. Piscopo] to -- for Hennessee Group to provide services to South Cherry Street?

    A    In 2001, when South Cherry Street began to make investments, yes.

                      * * *

    Q    Okay. Did Miss Piscopo describe to you what the terms of Hennessee Group's agreement with you would be during that phone call?

831866_1

January 30, 2007      BRESSLER, AMERY & ROSS, P.C.
Page 5

    A    The South Cherry Street, that, you know, 1 percent of the invested assets was to be in the -- generally rebated.

    Q    Did she describe any other terms of this agreement?

    A    I don't recall.

See Trans. p. 55, ln. 1 – 22.

Plaintiff's testimony on the issue of an alleged contract with Hennessee Group makes clear that Plaintiff will not be able to adduce allegations, far less facts, of any *enforceable* contact with Hennessee Group.

Respectfully submitted,

*[signature]*

Lawrence E. Fenster

cc:   Magistrate Judge Mark D. Fox (by facsimile and regular mail)
      Ted Poretz, Esq. (by facsimile and regular mail)

831866_1