UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____x

IN RE BAYOU HEDGE FUND LITIGATION                    06 MDL 1755 (CM)


_____x

THIS DOCUMENT RELATES TO:


_____x

SOUTH CHERRY STREET LLC,

                    Plaintiff,                                     06 CV 2943 (CM)

          -against-

HENNESSEE GROUP LLC, ELIZABETH
LEE HENNESSEE AND CHARLES A.
GRADANTE,

                    Defendants.


_____x


          DECISION AND ORDER ADHERING TO DECISION AFTER REARGUMENT


McMahon, J.:

          Defendants have moved for reargument of the Court's decision dated December 5, 2006,
in which I ruled that South Cherry was not a party to a certain Agreement with Hennessee Group
containing an arbitration clause, on the ground that the Court failed to address an argument made
to Judge Fox: namely, that South Cherry was bound by the arbitration clause contained in the
Agreement it did not sign because it ratified the agreement (by accepting benefits thereunder)
and so is estopped from denying it.[1]

          Plaintiff responds that this argument was not in fact made before the learned Magistrate
Judge, and so is waived. Defendants reply that the issue was not within the scope of the order of

_____

          [1] To be precise, defendants moved by letter for "clarification" of this court's order. Since
the order was perfectly clear, the court deemed the motion to be one for reargument, on the
ground that the court had overlooked an argument made below.

reference to Judge Fox, which they argue was limited to the question of agency.

Upon reargument, the court adheres to its original decision.

In deciding this motion, the court (for the reader's ease) incorporates the text of its January 23 order – with a few modifications, in view of a fuller record.

It is the general rule in this District that an argument or evidence not presented to a magistrate judge to whom a matter has been referred for a non-binding report and recommendation is waived. The rule is often stated thus: The District Judge need not consider at the objection stage any fact or legal argument not presented to the Magistrate Judge. Morgan v. Barnhart, No. 04-CV-6024, 2005 WL 2338709 (S.D.N.Y. Sept. 26, 2005), and cases cited. Whether there is a difference between, "The District Judge *need not*," and, "The District Court *must not*" (the former suggesting that the District Judge may, if she wishes, consider the new material), this court can state with confidence that I *would not* consider arguments that were not presented to Judge Fox, who conducted a hearing and wrote a lengthy and thoughtful report (albeit one that did not address the issue of ratification and estoppel).

To see whether the issue of ratification and estoppel was in fact presented to the learned Magistrate Judge, I cannot refer to post-hearing briefs, because the parties decided not to submit them. I can look only at the original moving papers that were submitted to this court and referred to Judge Fox.

I have, therefore, read the briefs submitted on the referred motion by the Hennessee Defendants.

At page 4 of the moving brief, Hennessee stated the following proposition:

Furthermore, the Second Circuit has consistently held that non-signatories are bound by arbitration agreements under general principles of contract and agency law. *See* Thomson-CSF v. American Arbitration Association, 64 F.3d 773, 776 (2d Cir. 1995) (holding that a non-signatory is bound by an arbitration agreement under the following theories: Incorporation by reference, assumption, estoppel, agency and veil piercing/alter ego); *see also* Hickox v. Friedland, No. 01-CV-2025, 2001 WL 1490696, at *9 (S.D.N.Y. Nov. 21, 2001)(holding that a non-signatory was estopped from challenging the arbitration clause when he knowingly accepted the benefit of the agreement containing the arbitration clause); *see also,* Best Concrete Mix Corp. v. Lloyd's of London Underwriters, 413 F. Supp. 2d 182, 187 (E.D.N.Y. 2006) (non-signatory was bound by an arbitration clause under principles of estoppel where the non-signatory retained a direct benefit from the agreement containing the arbitration clause and, knowing of said clause, failed to object).

Plaintiff has retained (and continues to retain) a benefit from the Agreement because it has received investment advisory services from Hennessee Group

and now seeks to hold Defendants accountable for Hennessee Group's alleged
failure to fulfill its duties under the Agreement. Therefore, Plaintiff
is estopped from challenging the enforceability of the arbitration clause.
*See* Hickox, 2001 WL 1490696 at *9.

Defendants identified the benefits received under the Agreement as (1) receipt by South
Cherry of investment advisory services from Hennessee Group, and (2) seeking to hold
defendants accountable for Hennessee Group's alleged failure to fulfill its duties under the
Agreement. (Id.) The briefs and moving papers do not identify any other benefits purportedly
retained by South Cherry. More significantly, they do not argue that the investment services
were received by South Cherry from Bollman rather than directly from Hennessee (which is the
nuance now put on this argument by the Hennessee Defendants). The brief  simply mentions that
South Cherry received investment advisory services from the Hennessee Group "pursuant to the
Agreement." Since the Hennessee Defendants' first line of defense against litigating in this court
was that South Cherry was a party to the agreement because it had been signed on South
Cherry's behalf by its agent (Bollman), that is hardly surprising.

Defendants' original arguments about the receipt of advisory services and Hennessee's
failure to fulfill its duties – that is, the arguments made prior to receiving the Report and
Recommendation of the learned Magistrate Judge – are predicated on a fallacious assumption:
namely, that South Cherry is suing for breach of the Investment Advisory Agreement signed by
Bollman. I do not understand South Cherry to be doing anything of the sort. Indeed, I  look in
vain in the complaint for any mention of the agreement signed by Bollman – there is none. And
having taken the consistent position that it is *not* party to the Investment Advisory Agreement
(because Bollman had no authority to bind it to that agreement), South Cherry is now and
forever judicially estopped from suing for breach of that agreement and from seeking to enforce
any duty owed to it by Hennessee pursuant to that Agreement.  In order to prevail, plaintiff will
have to prove that there was some other contract between it and Hennessee Group. I have no idea
what that "contract" might be, but I look forward with great interest to seeing evidence about
exactly what sort of *enforceable* contract, with sufficiently definite terms, South Cherry entered
into with the Hennessee Group. If there is no such contract, then South Cherry's breach of
contract claim would have to be dismissed.

Ratification and estoppel are again mentioned on page 7 of the Defendants' reply brief.
The argument here is even more limited than the one made in the moving brief: "By filing a
claim for breach of contract, Plaintiff has retained, and continues to retain a benefit from the
Agreement by attempting to use its provisions offensively in this litigation." (Reply Br. at 7.)
Thus, suing for breach of the contract signed by Bollman (allegedly on South Cherry's behalf) is
South Cherry's *only* identifiable retained benefit under the agreement. For the reasons stated
above, the court rejects this argument, since it is predicated on the unsupportable premise that
the "contract" allegedly "breached" by Hennessee is Bollman's Investment Advisory Agreement.

Those were the briefs that Judge Fox had in his possession when he issued his Report and
Recommendation. In their objection to the Report and Recommendation of Magistrate Judge
Fox, the Hennessee Defendants changed the "spin" on their contention that South Cherry
received and retained a benefit from the Agreement "because it received investment advisory

services from Hennessee Group." Defendants argued as follows: (1) while Bollman may not have signed the Hennessee Investment Advisory Agreement on behalf of South Cherry, he signed it on behalf of himself; (2) pursuant to Bollman's own Investment Advisory Agreement, Bollman received advice; (3) Bollman passed that advice on to South Cherry; (4) that gave South Cherry a benefit under the Agreement, even though it was not a signatory to the Agreement; (5) South Cherry accepted that benefit when it accepted the advice; (6) the Agreement contains an arbitration clause; so (7) South Cherry is bound by the arbitration clause. (Objections to the Report and Recommendation of Magistrate Judge Fox at 12-14).

This description of the "retained benefits" argument does not appear in any brief filed in support of the motion prior to the filing of the objections. Nor were the Hennessee Defendants, in their response to this court's January 23 Order, able to point to any place in the hearing transcript where they articulated this theory to Judge Fox. The court read the transcript of the hearing, and there is no mention of this interpretation. I reject any suggestion that Judge Fox could have divined such a "for want of a nail, the kingdom was lost" theory from the Hennessee Defendants' use of the phrase, "Plaintiff has retained (and continues to retain) a benefit from the Agreement because it has received investment advisory services from Hennessee Group," which appears in their original moving brief. As noted above, the reply brief – by flatly stating that the benefit (singular) received under the Agreement was the right to bring suit under the Agreement – at least suggests (if not more) that this new theory is not the theory Hennessee was pursuing on its motion. It is thus not surprising that Judge Fox's Report and Recommendation makes no mention whatever of this argument.

Instead, the Hennessee Defendants argue that the order of reference to Judge Fox was limited to the issue of Bollman's agency to sign the agreement on behalf of South Cherry.

Hennessee's reading of the order of reference is unduly narrow. Judge Fox was charged with "finding the facts necessary to enable the court to conclude what Bollman's relationship was to South Cherry *and* whether South Cherry can fairly be said to have been acting through Bollman in the making of the Investment Advisory Contract . . . . I will ask for a report and recommendation containing findings of fact and conclusions of law concerning the existence or non-existence of, and the scope of, any agency relationship between Bollman and South Cherry to be delivered to the court . . . ." (Emphasis added.) There is no question that what the court had in its mind was the issue of agency; no other issue was argued to the court in the fully briefed motion, and the issue of ratification and estoppel was addressed, if at all, only in the most oblique manner. However, Judge Fox was charged more generally with finding all facts that would permit me to draw a conclusion about what Bollman's relationship was with South Cherry. Judge Fox clearly understood this (See Report and Recommendation at 1-2).

It is ironic that Defendants would argue that the order of reference was limited to the question of agency, for in his Report, Judge Fox found at least some of the facts necessary for Hennessee to make its new argument. Although there is evidence in the record that South Cherry's principal, Fred Groothius, spoke to Leeana Piscopo of Hennessee Group prior to making every investment on behalf of South Cherry and received materials that were sent directly to South Cherry about investments (Tr. 35), there is also evidence that "Bollman discussed hedge fund investments with South Cherry and disclosed to Groothius the investment

making every investment on behalf of South Cherry and received materials that were sent directly to South Cherry about investments (Tr. 35), there is also evidence that "Bollman discussed hedge fund investments with South Cherry and disclosed to Groothius the investment recommendations made by Hennessee (Report at 5), and, "Bollman made many recommendations to Groothius based on advice he had received from Hennessee." (Id. at 11-12.) Judge Fox even expressed the view that Bollman may have violated the terms of the Investment Advisory Agreement he signed by transmitting this information to Groothius!

I have reviewed the transcript and I agree with Judge Fox's conclusion that, while Groothius was the ultimate decision-maker at South Cherry, he obtained investment advice both from Leeana Piscopo at Hennessee and from Bollman, who had in turn received that advice from Charles Gradante and Elizabeth Lee Hennessee. However, the learned Magistrate Judge did not reach any conclusions about the degree to which Groothius relied on his discussions with Bollman in making investment decisions for South Cherry, or to what degree he relied on the information that was provided directly to him by Piscopo. Judge Fox also found that Groothius had seen Bollman's Investment Advisory Agreement before it was signed, but this does not conclusively establish that Groothius was aware that the Agreement contained an arbitration clause.

If the Hennessee Defendants had explicitly articulated before Judge Fox the theory they first raised with this court in their objections to the Magistrate Judge's Report, Judge Fox could have explored this matter fully at the hearing and found whatever facts were necessary to dispose of Hennessee's argument, one way or the other. Put otherwise, he could have found the facts necessary to enable the court to decide the motion, which was his charge. According to the Report (which I have no reason to question), Judge Fox gave the parties an opportunity to submit post-hearing briefs; even at that stage, the Hennessee Defendants could have made the argument that was missing from the original motion papers, and justified its late submission by referring to the evidence that came out at the hearing. By declining the magistrate judge's offer, they kept him from considering the argument they now press on me. Thus, the Hennessee Defendants' failure to articulate their argument in the original motion papers or at the hearing before Magistrate Judge Fox prevented the learned magistrate judge from fully carrying out the reference.

Hennessee's clear articulation of its "receipt of benefits" argument on ratification and estoppel thus comes too late. On reconsideration, the court adheres to its original decision.

Dated: February 16, 2007

_____
U.S.D.J.


BY FAX TO ALL COUNSEL

BY HAND TO MAGISTRATE JUDGE FOX