UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

IN RE BAYOU HEDGE FUND INVESTMENT :    06 MD 1755 (CM)
LITIGATION

------------------------------------------------------------- X

THIS DOCUMENT RELATES TO:

------------------------------------------------------------- X

SOUTH CHERRY STREET, LLC,    :

           Plaintiff,    :

      :    No.: 06-cv-02943 (CM)

     vs.    :

HENNESSEE GROUP LLC,    :
ELIZABETH LEE HENNESSEE and
CHARLES GRADANTE

         Defendants.    :    **Electronically Filed**

_____

---

## DEFENDANTS' BRIEF IN SUPPORT OF THEIR
## MOTION TO DISMISS THE AMENDED COMPLAINT

---

BRESSLER, AMERY & ROSS
17 State Street, 34th Floor
New York, New York 10004
(212) 425-9300
Attorneys for Defendants
Hennessee Group, LLC, Elizabeth Lee
Hennessee and Charles Gradante

On the Brief:   Bennett Falk (BF 5539)
             Matthew C. Plant (MP 0328)
             Matthew E. Wolper (MW 8835)

# TABLE OF CONTENTS

**PAGES**

TABLE OF AUTHORITY..........................................................................................................ii

PRELIMINARY STATEMENT ...........................................................................................1

SUMMARY OF ARGUMENT..............................................................................................1

STATEMENT OF FACTS......................................................................................................3

ARGUMENT............................................................................................................................7

I.      PLAINTIFF'S SECTION 10(b) AND RULE 10b-5 CLAIMS
        FAIL TO PLEAD FRAUD WITH THE REQUIRED
        PARTICULARITY..............................................................................................6

II.     PLAINTIFF'S SECTION 20(a) CLAIMS ARE NOT PLED
        WITH THE REQUISITE PARTICULARITY ....................................................11

III.    PLAINTIFF FAILS TO ADEQUATELY PLEAD LOSS
        CAUSATION.......................................................................................................12

IV.     PLAINTIFF'S BREACH OF CONTRACT CLAIM AGAINST
        HENNESSEE GROUP FAILS TO STATE A CLAIM UPON
        WHICH RELIEF CAN BE GRANTED..............................................................15

V.      PLAINTIFF'S BREACH OF FIDUCIARY DUTY CLAIM IS
        BARRED BY THE MARTIN ACT ....................................................................21

VI.     ALL CLAIMS SHOULD BE DISMISSED PURSUANT TO FRCP
        12(b)(6) BECAUSE THE AMENDED COMPLAINT FAILS TO ALLEGE
        THAT DEFENDANTS OWED PLAINTIFF A DUTY TO PERFORM
        INITIAL OR ON-GOING DUE DILIGENCE OF ITS HEDGE FUND
        PORTFOLIO.........................................................................................................23

CONCLUSION.....................................................................................................................25

## TABLE OF AUTHORITY

### Federal Cases

Acito v. IMCERA Group, Inc.
  43 F.3d 47, 51 (2d. Cir. 1995) ................................................................... 7

AUSA Life Ins. Co. v. Ernst and Young
  206 F.3d 202, 220 (2d Cir. 2000) ......................................................... 9, 14

Black v. Arthur
  18 F. Supp.2d 1127, 1131 (D. Ore. 1998) ............................................... 3

Boguslavsky v. Kaplan
  159 F.3d 715, 720 (2d. Cir. 1998) .......................................................... 11

Burke v. Bevona
  866 F.2d 532, 538 (2d. Cir. 1989) .......................................................... 19

Castellano v. Young & Rubicam
  257 F.3d 171, 189 (2d. Cir. 2001) ..................................................... 14, 21

Citibank, N.A. v. K-H Corp.
  968 F.2d 1489, 1495 (2d. Cir. 1992) ...................................................... 13

Computech Int'l., Inc. v, Compaq Computer Corp.
  No. 02 Civ. 2628, 2002 WL 31398933 *3 (S.D.N.Y. Oct. 24, 2002) ..................... 19

Dura Pharmaceuticals, Inc. v. Broudo
  544 U.S. 336, 342-343 125 S. Ct. 1627, 1631-1632 (2005) .......................... 13

Emergent Capital Inv. Mgmt. v. Stonepath Group, Inc.
  343 F.3d 189, 197 (2d. Cir. 2003) ..................................................... 13, 14

First Nationwide Bank v. Gelt Funding Corp.
  27 F.3d 763, 769 (2d. Cir. 1994) ........................................................... 15

Freedman v. Chemical Construction Corp.
  43 N.Y.2d 260, 267 (1977) .................................................................... 20

Gabriel Capital, L.P. v. Natwest Finance, Inc.
  137 F. Supp.2d 251, 266-267 (S.D.N.Y. 2000) ................................... 21, 23

Ganino v. Citizens Utilities Co.
  228 F.3d 154, 168 (2d. Cir. 2000) ........................................................... 9

839507_1

Gompper v. VISX, Inc.
298 F.2d 893, 897 (9th Cir. 2002) ................................................................... 10

Hart v. Internet Wire, Inc.
145 F. Supp. 2d 316, 321 (S.D.N.Y. 2001) ............................................... 1, 7, 11

Hudson Highlands Verterinary Med. Group, P.C. v. Wachovia
390 F. Supp. 2d 393, 395 (S.D.N.Y. 2005) ........................................................ 3

In re Bayer AG Securities Litigation
No. 03 Civ. 1546, 2004 WL 2190357, *16 (S.D.N.Y. Sep. 30, 2004) .................... 12

In re Carter Wallace, Inc. Sec. Litig.
220 F.3d 36, 39 (2d. Cir. 2000) ................................................................... 10

In re Marsh & McLennan Cos. Securities Litigation
No. o4 Civ. 8144, 2006 WL2057194, *36 (S.D.N.Y. July 20, 2006) .................... 12

In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.
273 F. Supp. 2d 351, 369 (S.D.N.Y. 2003) ......................................................... 7

In re Merrill Lynch Research Reports Sec. Litig.
2003 WL 22451064 at *7 (S.D.N.Y. Oct. 29, 2003) ............................................. 9

In re Merrill Lynch Tyco Research Securities Litigation
2004 U.S. Dist. LEXIS 2247, *13-14 (S.D.N.Y. February 18, 2004) .................... 15

In re September 11 Litigation
280 F. Supp. 2d 279, 301302 (S.D.N.Y. 2003) ................................................. 15

Kalnit v. Eichler
264 F.3d 131, 138 (2d. Cir. 2201) ............................................................... 9, 10

Lapin v. Goldman Sachs Group, Inc.
No. 04CV2236, 2006 WL 2850226, *19-20 (S.D.N.Y. Sept. 29, 2006) ................ 12

Leadsinger, Inc. v. Cole
No. 05 Civ. 5606, 2006 WL 2320544, *10-11 (S.D.N.Y. Aug. 20, 2006) ............ 17

Lentell v. Merrill Lynch & Co.
396 F.3d 161 (2d. Cir. 2005) ................................................................... 14, 15

Louros v. Kriecas
367 F. Supp. 3d 572, 595 (S.D.N.Y. 2005) ...................................................... 21

Mills v. Polar Molecular Corp.
  12 F.3d 1170, 1175 (2d. Cir. 1993) ..................................................................................7

Mishkin v. Ageloff
  No. 97 Civ. 2690, 1998 WL 651065, *34 (S.D.N.Y. Sep. 23, 1998) ........................12

Modern Settings, Inc. v. Prudential-Bache Securities, Inc.
  603 F. Supp. 370, 371 (S.D.N.Y. 1985) ...............................................................11

Morales v. Cheskaty
  No. 00-015731, 2000 WL 1881447 (9th Cir. Dec. 4, 2000) ........................................3

Pension Comm. of University of Montreal Pension Plan v. Banc of America Securities, LLC
  No. 05 Civ 9016, 2006 WL 2053326, *13 (S.D.N.Y. July, 20, 2006) ......................12

SEC v. First Jersey Securities, Inc.
  101 F.3d 1450, 1472 (2d. Cir. 1996) .................................................................11

Sedona Corp. v. Ladenburg Thalmann & Co., Inc.
  No. 03 Civ. 3120, 2005 WL 1902780, *21-23 (S.D.N.Y. Aug, 9, 2005) .................21, 22

Seneca Insur. Co.
  No. 95 Civ. 10701, 1996 WL 312230, *2-3 (S.D.N.Y. June 10, 1996) ....................20

Shields v. Citytrust Bank Corp.
  25 F.3d 1124, 1130 (2d. Cir. 1994) ....................................................................9

Sira v. Morton
  38 F.3d 57, 66-67 (2d. Cir. 2004) ........................................................................3

Suez Equity Investors, L.P. v. Tornoot-Dominion Bank
  250 F.3d 87, 95 (2d. Cir. 2001) .........................................................................14

Troyer v. Karcagi
  476 F. Supp. 1142, 1152 (S.D.N.Y. 1979) ...........................................................11

United Magazine Co. v. Murdock Magazines Distribution, Inc.
  146 F. Supp. 2d 385, 403-404 (S.D.N.Y. 2001) ...................................................19

Universal Marine Medical Supply, Inc. v. Lovechhio, et al
  8 F.Supp. 2d 214 (E.D.N.Y. 1998) ....................................................................16

# OTHER AUTHORITIES

FRCP 9(b), 10(b), 10b-5 and 12(b)(6) ..................................................................... 1, 7, 9, 11, 25

15 U.S.C. §§ 78u-4(b)(1) and (2); 78t ..................................................................... 7, 9, 11

Section 5-701 and 5-701(a)(10) New York General Obligations Laws ......................... 16, 18, 20

H.R. Conf. Rep. No. 104-369 at 41 (1995) ................................................................. 7

## INTRODUCTION

Defendants Hennessee Group, LLC ("Hennessee Group"), Elizabeth Lee Hennessee ("Hennessee") and Charles J. Gradante ("Gradante") (collectively the "Defendants") submit this brief in support of their motion, pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss Plaintiff's Amended Complaint ("Amended Complaint") in this action.

## SUMMARY OF ARGUMENT

On or about April 12, 2006, Plaintiff South Cherry Street, LLC ("Plaintiff") filed its Complaint, which purported to set forth causes of action against Hennessee Group for breach of contract, breach of fiduciary duty and violation of Section 10(b) of the Securities and Exchange Act of 1934 and Rule 10b-5, promulgated thereunder. The Complaint also alleged a derivative cause of action against Gradante and Hennessee for "control person" liability under Section 20(a) of the Securities and Exchange Act of 1934. The Complaint was fatally deficient in that it relied almost exclusively on representations allegedly made by Hennessee Group to its client Craig Bollman ("Bollman") in formulating the basis for its causes of action. Although the Complaint described Bollman as Plaintiff's "agent," Plaintiff has since retreated from that representation and now maintains that Bollman had no authority to do anything on Plaintiff's behalf. In apparent recognition of the inadequacy of the Complaint, after Defendants filed their motion to dismiss, Plaintiff took a voluntary dismissal.

On or about February 26, 2007, Plaintiff filed its Amended Complaint. The Amended Complaint is substantively similar to the original Complaint, except that Plaintiff now conveniently alleges that the same representations allegedly made to Bollman were made directly to Plaintiff's principal, Fred Groothuis, and that a verbal agreement existed between Plaintiff and Hennessee Group. In Houdini like fashion, Plaintiff has created a new set of facts that were

apparently unavailable when it filed the original Complaint, completely altering the factual background and predicate that supported its claims. However, despite being given a "second bite at the apple," the Amended Complaint fails to correct the fatal defects that warranted dismissal of the original Complaint. Specifically, (1) it fails to comply with FRCP Rule 9(b) in that Plaintiff's claim for violation of Section 10(b) and Rule 10b-5 against Hennessee Group and the claims for "control person" liability against Gradante and Hennessee are not pled with the requisite particularity[1]; (2) it fails to adequately plead the element of loss causation with respect to those claims; (3) it fails to state a cause of action for breach of contract because Plaintiff has not pled the existence or terms of a written or oral contract between Plaintiff and Hennessee Group and any oral contract is barred by the statute of frauds; (4) it fails to state a cause of action for breach of fiduciary duty because the underlying dispute relates to the purchase or sale of securities and/or the rendering of investment advice "within or from" New York and is therefore preempted by the Martin Act; and (5) it fails to demonstrate that Hennessee Group had a duty to perform initial and on-going due diligence with respect to Plaintiff's hedge fund portfolio and, thus, all claims should be dismissed pursuant to FRCP 12(b)(6).

Additionally, Plaintiff's most recent allegation that the same representations Hennessee Group allegedly made to Bollman were also sent to Plaintiff in a document titled "Hennessee Hedge Fund Advisory Group Investment Presentation" ("Investor Presentation") is patently false. The Investor Presentation, which is attached hereto, does not contain any such representations and, in any event, would not constitute an offer or contract to perform services.

---

[1] Although the allegations in the Complaint, to the extent they purport to allege facts, must be accepted as true for purposes of this motion only; "[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to withstand a motion to dismiss." Hart v. Internet Wire, Inc., 163 F. Supp. 2d 316, 321 (S.D.N.Y. 2001) (Pollack, J.), aff'd, 50 Fed. Appx. 464 (2d Cir. 2002).

Simply put, Hennessee Group never agreed to perform advisory services for Plaintiff. Accordingly, and for the reasons set forth below, Defendants respectfully request that the Amended Complaint be dismissed with prejudice.[2]

## STATEMENT OF FACTS

### A.    The Parties

#### 1.    *Hennessee Group, LLC, Charles J. Gradante and Elizabeth Lee Hennessee*

Hennessee Group is a New York limited liability corporation with its principal place of business at 500 Fifth Avenue, 47th Floor, New York, NY. See Am. Compl. at ¶ 2. Gradante and Hennessee are the sole principals of Hennessee Group. See Am. Compl. at ¶¶ 3-4. Hennessee Group is a registered investment advisor that provides its clients with hedge fund consulting services. See Am. Compl. at ¶¶ 7- 8, 12-14.

#### 2.    *Craig Bollman, Fred Groothuis and South Cherry Street, LLC*

On or about August 4, 2001, Bollman executed an Investment Advisory Agreement with Hennessee Group. Although the original Complaint described Bollman as the "agent" of South Cherry Street, LLC, Plaintiff has since backtracked from this allegation and now contends that Bollman was merely a "secured creditor of South Cherry" and was authorized to do nothing on its behalf. See Compl. at ¶ 12; Am. Compl. at ¶ 12.

---

[2] Defendants acknowledge that, in considering a motion to dismiss, the Court is limited to the four corners of the Complaint. However, courts may consider any written instrument attached to it as an exhibit, material incorporated in it by reference, and documents that, although not integrated by reference, are "integral" to the complaint. Sira v. Morton, 380 F.3d 57, 66 - 67 (2d Cir. 2004); Hudson Highlands Veterinary Med. Group, P.C. v. Wachovia, 390 F. Supp. 2d 393, 395 (S.D.N.Y. 2005). Courts are also permitted to take judicial notice of matters in the general public record, including records and reports of administrative bodies and records of prior litigation, without converting a motion to dismiss into a motion for summary judgment. See Black v. Arthur, 18 F. Supp.2d 1127, 1131 (D. Ore. 1998); Morales v. Cheskaty, No. 00-15731, 2000 WL 1881447, (9th Cir. Dec. 4, 2000).

Plaintiff South Cherry Street, LLC purports to be a Delaware limited liability corporation with its principal place of business in Denver, Colorado.  See Am. Compl. at ¶ 1.  Fred Groothuis ("Groothuis") purports to be the sole principal and decision-maker with respect to Plaintiff's business and investments.  See Am. Compl. at ¶ 12.  The Amended Complaint does not allege that Plaintiff or Groothuis executed an Investment Advisory Agreement with Hennessee Group and, indeed, they did not.  See generally Am. Compl. Plaintiff alleges that it invested in the Bayou Accredited Fund, LLC, a Connecticut hedge fund, on the recommendation of Hennessee Group.  See Am. Compl. at ¶¶ 7-8, 23-35.

**B.    The Allegations**

Plaintiff alleges that "[s]ometime in the year 2000, Craig Bollman ("Bollman"), a secured creditor of South Cherry through an entity he controlled, contacted Hennessee Group after reading about it in a financial publication."  See Am. Compl. at ¶ 12.  Plaintiff alleges that, thereafter, "Bollman and Hennessee Group met at Hennessee Group's offices" in New York. See Am. Compl. at ¶ 12.  At this meeting, Plaintiff alleges that Hennessee Group, "through Gradante, Hennessee and others," made a series of representations to Bollman describing its "unique [five level] due diligence process in detail."  See Am. Compl. at ¶¶ 12-21.  Plaintiff alleges that Hennessee Group represented to Bollman that "a hedge fund would have to pass all five levels of due diligence review before Hennessee Group would ever recommend the hedge fund to a client."  See Am. Compl. at ¶ 15 (emphasis original).

Plaintiff's now alleges that these same representations were subsequently made to Plaintiff in a written Investment Presentation:

> Subsequent to making the representations set forth above to Bollman, Hennessee Group repeated them in writing to South Cherry and Groothuis directly. Sometime shortly after Bollman's meeting with Hennessee Group…it mailed a written presentation entitled 'Hennessee Hedge Fund Advisory Group Investor

Presentation'…to South Cherry's sole shareholder, Groothuis.  The Hennessee Investor Presentation contained precisely the same detailed description of Hennessee Group's pre-recommendation and on-going due diligence processes as Hennessee Group provided to Bollman, described in paragraph nos. 12 through 20, above.  See Am. Comp. at ¶ 21.

Significantly, the Investor Presentation referenced in the Amended Complaint does not, by any stretch of the imagination, describe Hennessee Group's five level due diligence process remotely to the degree alleged in the Amended Complaint or which was allegedly conveyed to Bollman.  See Gradante Decl at ¶ 3 and Ex. A at p. 23, attached thereto.  It is simply an introductory marketing brochure.  See Id.  Perhaps this is why Plaintiff did not mention the Investor Presentation in the original Complaint and intentionally failed to attach it to the Amended Complaint.  Additionally, other than substantially mischaracterizing the contents of the Investor Presentation, Plaintiff still does not allege that a contract—written or oral—was entered into between Plaintiff and Hennessee Group.  See generally Am. Compl.  Having still failed to allege that Hennessee Group obligated itself to perform any level of due diligence, Plaintiff nonetheless contends that, based on the Investor Presentation, Groothuis "decided to invest South Cherry's assets in hedge funds…"  See Am. Compl. at ¶ 21.

The Amended Complaint states that one of the hedge funds ultimately recommended by Hennessee Group was the Bayou Accredited Fund, LLC ("Bayou").  See Am. Compl. at ¶¶ 7-8, 21, 23, 28, 32.  In connection with its investment in the Bayou Accredited Fund, LLC, Plaintiff alleges that Hennessee Group provided Plaintiff with certain information about Bayou and its principals, including six years of monthly performance figures for Bayou and biographical information regarding the fund's "founder and principal," Samuel Israel.  See Am. Compl. at ¶¶ 23-35.  Plaintiff further alleges that Hennessee Group represented that it had reviewed Bayou's audited financial statements and took steps to verify the "*bona fides*" of Bayou's auditor.  See

Am. Compl. at ¶ 27. Plaintiff contends that all of these representations were false but does not attach these alleged "written" misrepresentations to the Amended Complaint or provide a shred of evidence demonstrating why they lacked a reasonable basis. See Am. Compl. at ¶¶ 23-35.

After Plaintiff's initial investment in Bayou, Plaintiff alleges that Hennessee Group continued to misrepresent material facts regarding Bayou by providing Plaintiff with false performance figures, incorrectly reporting an appreciation of Plaintiff's investment. See Am. Compl. at ¶¶ 32-34. Although the Amended Complaint does not specifically identify the documents that allegedly contain the false performance figures, Hennessee Group did provide Bollman with "Statements of Cash Flow" and "Performance Monitors" that reflect the rates of return for Bayou. See Gradante Decl at ¶ 4 and Ex. B & C, attached thereto. Both of these documents, which clearly state that they were prepared for Craig Bollman, contain footnotes with cautionary language that indicate that no guarantee is being made by Hennessee Group with respect to the accuracy of the performance data and that the data was provided by the hedge fund manager. See Id.

Plaintiff contends that Hennessee Group would have discovered these inaccuracies had it conducted "[a]ny review of Bayou Fund's positions," again without any facts suggesting that Hennessee Group was obligated or had the ability to do so. See Am. Compl. at ¶ 26. Plaintiff concludes that, "[a]bsent Hennessee Group's representation to South Cherry that it conducted the five level due diligence process, and its agreement to conduct the post-investment on-going due diligence process," it would not have invested in Bayou. See Am. Compl. at ¶ 22.

## ARGUMENT

### I.    PLAINTIFF'S SECTION 10(b) AND RULE 10b-5 CLAIMS FAIL TO PLEAD FRAUD WITH THE REQUIRED PARTICULARITY

A complaint alleging securities fraud must meet the strict mandate of Rule 9(b) and the

Private Securities Litigation Reform Act ("Reform Act") and state "with particularity" the circumstances constituting the fraud.  Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993).  Rule 9(b) requires a complaint alleging securities fraud to "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  Acito v. IMCERA Group, Inc., 47 F.3d 47, 51 (2d Cir. 1995), quoting Mills, 12 F.3d at 1175.

Congress enacted the Private Securities Litigation Reform Act ("Reform Act"), 15 U.S.C. 78u-4(b), "to strengthen existing pleading requirements" for securities fraud, H.R. Conf. Rep. No. 104-369, at 41 (1995), reprinted in 1995 U.S.C.C.A.N. 730, 740, and to require the complaint to "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed," 15 U.S.C. § 78u-4(b)(1) (emphasis added).  Thus, "to withstand a motion to dismiss plaintiffs must detail specific contemporaneous data or information known to the defendant that was inconsistent with the representation in question."  Hart v. Internet Wire, Inc., 145 F. Supp. 2d 360, 368 (S.D.N.Y. 2001) (Pollack, J.) (citation omitted).  Put another way, "plaintiffs must allege with particularity, and not in general terms, the statements or omissions that they contend were fraudulent, as well as the fraud itself."  In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig., 273 F. Supp. 2d 351, 369 (S.D.N.Y. 2003).  For the reasons set forth below, Plaintiff's claims against Hennessee Group for violation of Section 10(b) and Rule 10b-5 are not pled with the requisite particularity and should be dismissed.

### A.    The Amended Complaint Fails To Adequately Allege That Hennessee Group Made Any Representations (Let Alone Misrepresentations) To Plaintiff Regarding Its Services Or That Its Alleged Misrepresentations Regarding Bayou Lacked A Reasonable Basis

The Amended Complaint is devoid of any allegations demonstrating that Defendants made representations of fact (let alone misrepresentations) directly to <u>Plaintiff</u> regarding Hennessee Group's services.    The only allegations in the Amended Complaint describing the scope of services to be performed by Hennessee Group for <u>Plaintiff</u> is the marketing brochure titled Investor Presentation, which does not, in any way, shape or form, describe Hennessee Group's services to the degree outlined in the Amended Complaint or otherwise constitute an offer or contract to perform any functions on Plaintiff's behalf.    <u>See</u> Gradante Decl at ¶ 3 and Ex. A at p. 23, attached thereto.    Defendants have serious reservations whether the Investor Presentation was even sent to Plaintiff or to Groothuis.

The remaining allegations relating to Plaintiff's securities fraud claim relate to misrepresentations allegedly communicated to Plaintiff by former Hennessee Group employee Leeana Piscopo regarding Bayou and its principals.    <u>See</u> Am. Compl. at ¶ 23-31.    Other than concluding that Hennessee Group "should" have discovered certain facts the would have perhaps contradicted the below-referenced representations, Plaintiff does not explain why the alleged misrepresentations lacked a reasonable basis at the time that they were made.    The following examples of Plaintiff's pleading indicate their lack of particularity on their face:

- "Hennessee Group represented to South Cherry that Bayou, and the Bayou Family Funds, were audited by HHCO, a fact intended to buttress the credibility of these funds to knowledgeable investors.    Hennessee Group made the same representation to at least one other of its clients, DePauw University, much later."    <u>See</u> Am. Compl. at ¶ 23.

- "Hennessee Group represented in writing to South Cherry, among other things, that the predecessor Bayou Fund had been launched in 1997, that it had a greater than 19% annualized return since inception, that it was profitable in 78% of the months since inception, and that it had accomplished all of this at relatively low risk relative to the broader

marketplace." <u>See</u> Am. Compl. at ¶ 26.

- "As part of its investment recommendation to South Cherry, Hennessee Group also provided it with six years of monthly performance figures for Bayou Fund…The figures Hennessee Group provided to South Cherry were all false, showing profits where there were instead large losses." <u>See</u> Am. Compl. at ¶ 28.

- "[T]he Hennessee Group biography of Israel represented that 'from 1992 to 1996, Israel was head trader for Omega Advisors, managing assets exceeding $4 billion for Leon Cooperman,' and that at Omega, Israel 'was responsible for all equity and financial future execution, and shared responsibility for hedging the portfolio using futures and options'…Hennessee Group's biography of Israel was false." <u>See</u> Am. Compl. at ¶¶ 29-30.

The vagueness of the Amended Complaint is compounded by Plaintiff's failure to attach any documents and/or correspondence to the Amended Complaint that reflect these alleged misrepresentations. Accordingly, Plaintiff's securities claims should be dismissed pursuant to Rule 9(b).

### B.    <u>The Amended Complaint Fails To Adequately Plead Scienter</u>

Pursuant to the Reform Act, plaintiff must also "state <u>with particularity facts</u> giving rise to a <u>strong inference</u> that the defendant acted with the required state of mind." 15 U.S.C. 78u-4(b)(2) (emphasis added). "The requisite state of mind, or scienter, in an action under Section 10(b) and Rule 10b-5, that the plaintiff must allege is 'an intent to deceive, manipulate or defraud.'" <u>Kalnit v. Eichler</u>, 264 F.3d 131, 138 (2d Cir. 2001) <u>quoting</u> <u>Ganino v. Citizens Utilities Co.</u>, 228 F.3d 154, 168 (2d Cir. 2000); <u>see also</u> <u>In re Merrill Lynch Research Reports Sec. Litig.</u>, 2003 WL 22451064, at *7 (S.D.N.Y. Oct. 29, 2003).

As Judge Oakes explained in the principal opinion in <u>AUSA Life Ins. Co. v. Ernst and Young</u>, 206 F.3d 202, 220 (2d Cir. 2000) (citation omitted), an intent to defraud exists when it is apparent to the actor that the alleged scheme is "necessarily going to injure." Accordingly, the complaint must allege sufficient facts to support a strong inference that defendants knew or reasonably foresaw that the acts and omissions complained of would cause the harms that

actually came about.  An intent to defraud may also be alleged by adducing facts sufficient to constitute "'strong circumstantial evidence of defendants' 'conscious misbehavior or recklessness.'"  Kalnit, 264 F.3d at 142, quoting Shields v. Citytrust Bank Corp., 25 F.3d 1124, 1130 (2d Cir. 1994).  In this context, recklessness must approach "willful blindness," constituting "conduct which is 'at the least . . . highly unreasonable . . . represent[ing] an extreme departure from the standards of ordinary care to the extent that the danger was so obvious that the defendant must have been aware of it'"  Kalnit, 264 F.3d at 142, quoting In re Carter Wallace, Inc. Sec. Litig., 220 F.3d 36, 39 (2d Cir. 2000).  In determining whether plaintiff has alleged facts supporting a strong inference of an intent to deceive, manipulate or defraud, "the court must consider all reasonable inferences to be drawn from the allegations, including inferences unfavorable to the plaintiffs."  Gompper v. VISX, Inc., 298 F.3d 893, 897 (9th Cir. 2002).

Plaintiff fails to allege any facts supporting a strong inference of an intent to defraud or of recklessness.  Plaintiff's allegation of scienter is best paraphrased as "had Hennessee Group conducted the due diligence that it promised, it would have uncovered the Bayou fraud."  See Compl. at ¶¶ 24, 26-30, 34-35.  This argument, which does not focus on "intentional" conduct on the part of Defendants, fails on two levels.  First, the Amended Complaint is devoid of allegations that Hennessee Group gave assurances to Plaintiff that it would conduct due diligence on its hedge fund investments.  In this regard, the Amended Complaint focuses on representations either allegedly made to Bollman, an individual who did not have authority to do anything on Plaintiff's behalf, or in the Investor Presentation.  As set forth above, the Investor Presentation was a marketing tool that has been completely mischaracterized in the Amended Complaint and does not contain the representations allegedly made to Bollman—and now also

allegedly made to Plaintiff.

Second, other than concluding that Hennessee Group would and should have discovered a fraud that was successfully concealed from investors, the public, employees, consultants, industry professionals and regulators for approximately seven years, Plaintiff fails to "detail specific contemporaneous data or information known to the defendant that was inconsistent with the representation in question." Hart, 145 F. Supp. 2d at 368. Rather, Plaintiff concludes that Defendants acted with the requisite state of mind because they did not uncover the fraud. However, allegations that a "defendant merely 'ought to have known' [are] not sufficient to allege recklessness." See Modern Settings, Inc. v. Prudential-Bache Securities, Inc., 603 F. Supp. 370, 371 (S.D.N.Y. 1985) (dismissing complaint, in part, where the plaintiffs failed to plead facts from which it may be inferred that the "danger" was so obvious that the defendant "must have been aware of it"), quoting Troyer v. Karcagi, 476 F. Supp. 1142, 1152 (S.D.N.Y. 1979). The fact that Bayou's principals concealed the fraud for approximately seven years certainly negates any inference of scienter Plaintiff may attempt to draw in its favor. Accordingly, because Plaintiff's allegations of scienter do not meet the strict mandate of Rule 9(b) and the Reform Act, Plaintiff's Section 10(b) and Rule 10b-5 claims should be dismissed.

## II.    PLAINTIFF'S SECTION 20(a) CLAIMS ARE NOT PLED WITH THE REQUISITE PARTICULARITY

The Amended Complaint's cause of action against Gradante and Hennessee for "control person" liability under Section 20(a) of the Securities and Exchange Act of 1934, see 15 U.S.C. § 78t, et. al., is also flawed. In order to establish a *prima facie* case under Section 20(a), Plaintiff must show (1) a primary violation by a controlled person; (2) control of the primary violator by the defendant; and (3) "that the controlling person was in some meaningful sense a culpable

participant" in the primary violation.  See Boguslavsky v. Kaplan, 159 F.3d 715, 720 (2d Cir. 1998), quoting SEC v. First Jersey Securities, Inc., 101 F.3d 1450, 1472 (2d Cir. 1996).

The majority of courts in the Second Circuit, including the Southern District of New York, have held that Section 20(a) claims must be pled with the same particularity as claims brought under Section 10(b).  See Lapin v. Goldman Sachs Group, Inc., No. 04CV2236, 2006 WL 2850226, *19-20 (S.D.N.Y. Sep. 29, 2006); In re Marsh & McLennan Cos. Securities Litigation, No. 04 Civ. 8144, 2006 WL 2057194, *36 (S.D.N.Y. July 20, 2006); In re Bayer AG Securities Litigation, No. 03 Civ. 1546, 2004 WL 2190357, *16 (S.D.N.Y. Sep. 30, 2004); Mishkin v. Ageloff, No. 97 Civ. 2690, 1998 WL 651065, *34 (S.D.N.Y. Sep. 23, 1998); but see Pension Comm. of University of Montreal Pension Plan v. Banc of America Securities, LLC, No. 05 Civ. 9016, 2006 WL 2053326, *13 (S.D.N.Y. July 20, 2006) (holding that "culpable participation" element of Section 20 claim was not required to be pled with particularity).

As set forth in Section I of this Memorandum, the Amended Complaint does not adequately allege a primary violation of the Securities and Exchange Act of 1934.  Without a primary violation of the Act, Plaintiff cannot maintain a cause of action under Section 20(a). Even if the Amended Complaint adequately alleges a primary violation, Plaintiff has not pled its Section 20(a) claim with the required particularity.  The only allegation attributable to Gradante and Hennessee is the generic statement that "[s]ometime in the year 2000," "Hennessee Group, through Gradante and Hennessee" conveyed to Bollman a series of misrepresentations regarding its due diligence process.  In addition to the fact that Plaintiff was not present at this meeting between Bollman and Hennessee Group, these allegations do not adequately plead "culpable participation."   Accordingly, for these reasons as well as those cited in Section I above, the claims against Gradante and Hennessee arising under Section 20(a) should be dismissed.

### III.   **PLAINTIFF FAILS TO ADEQUATELY PLEAD LOSS CAUSATION**

Another basis for dismissing Plaintiff's Section 10(b) and Rule 10b-5 claims is the failure to adequately plead loss causation.   The Second Circuit requires a plaintiff to plead <u>both</u> transaction causation and loss causation.   Transaction causation is the causal relationship between the misconduct alleged and Plaintiff's decision to invest in the Bayou Accredited Fund, LLC.   <u>See</u> <u>Emergent Capital Inv. Mgmt. v. Stonepath Group, Inc.</u>, 343 F.3d 189, 197 (2d Cir. 2003).   "Loss causation, by contrast, is the causal link between the alleged misconduct and the economic harm ultimately suffered by the plaintiff."   <u>Id.</u>

In <u>Citibank, N.A. v. K-H Corp.</u>, 968 F.2d 1489, 1495 (2d. Cir. 1992) (citations omitted), the Second Circuit explained:

> To establish loss causation a plaintiff must show, that the economic harm that it suffered occurred as a result of the alleged misrepresentations.   We have on occasion likened loss causation to the tort concept of proximate cause, . . . . because, similar to proximate cause, in order to establish loss causation, a plaintiff must prove that the damage suffered was a foreseeable consequence of the misrepresentation.

This definition of loss causation has been affirmed and reaffirmed both before the Second Circuit Court of Appeals and the United States Supreme Court.

In <u>Dura Pharmaceuticals, Inc. v. Broudo</u>, 544 U.S. 336, 342-343 125 S. Ct. 1627, 1631-1632 (2005), the Supreme Court held unanimously that a plaintiff claiming securities fraud must prove that the defendant's fraud caused an economic loss.   The <u>Dura</u> Court held that there must be a <u>direct</u> link between the alleged misrepresentation and omissions and the subsequent decline in value of the securities; even if a defendant causes an investor to buy stock at an artificially inflated price, "the logical link between the inflated share purchase price and any later economic loss is not invariably strong."   <u>Id</u>. at 342.   As the Court observed, securities fraud actions are designed "not to provide investors with broad insurance against market losses, but to protect

them against those economic losses that misrepresentations actually cause." Id. at 345.   A plaintiff therefore must show either that the subject of an allegedly false recommendation, or a disclosure of the falsity of those recommendations, or concealment or misstatement of any risks associated with the investment is the cause of the loss.   Id.   The Court succinctly stated "to 'touch upon' a loss is not to *cause* a loss, and it is the latter that the law requires." Id. at 343.

Shortly before the Supreme Court decided Dura, the Second Circuit addressed the issue of loss causation in Lentell v. Merrill Lynch & Co., 396 F. 3d 161 (2d Cir. 2005).   The Second Circuit Court of Appeals affirmed the district court's dismissal on the pleadings for failure to allege loss causation.   Clarifying the law in this area, and articulating principles later adopted by the Supreme Court in Dura, the Second Circuit underscored that a plaintiff must plead and prove that "the subject of the fraudulent statement or omission was the cause of the actual loss suffered." Id. at 175, quoting Suez Equity Investors, L.P. v. Tornoot-Dominion Bank, 250 F.3d 87, 95 (2d Cir. 2001) (emphasis added in Lentell); see also AUSA Life Ins. Co. v. Ernst and Young, 206 F.3d 202, 216 (2d Cir. 2000) (holding that "loss causation in effect requires that the damage complained of must be one of the foreseeable consequences of the misrepresentation").

Plaintiff's conclusory allegations that "[a]bsent Hennessee Group's representation that it conducted the detailed five level due diligence process, and its agreement to conduct the post-investment on-going due diligence process…South Cherry would not have opened a Hennessee Group account, and would not have invested in any hedge fund recommended by Hennessee Group, including Bayou" are only allegations of transaction causation.   See Am. Compl. at ¶ 22. These allegations do not demonstrate "a causal connection between the content of the alleged misstatements or omissions and the harm actually suffered." Emergent Capital, 343 F.3d at 199 citing Suez Equity Inv., 250 F.3d at 96; Castellano v. Young & Rubicam, 257 F.3d 171, 189 (2d

Cir. 2001).

Likewise, Plaintiff's allegations that Hennessee Group misrepresented the suitability of the Bayou Accredited Fund, LLC, its reported performance and the background of its principal and head trader, are also mere allegations of transaction causation that "explain[] why a particular investment was made, but does not speak to the relationship between the fraud and the loss of the investment." See Lentell, 396 F.3d at 174. Plaintiff's causation allegations are parallel to the "purchase-time value disparity" argument (i.e. that plaintiff purchased an investment that later declined in value) that has almost uniformly been rejected by the courts. See Dura, 544 U.S. at 343; Lentell, 396 F.3d at 174; In Re Merrill Lynch Tyco Research Securities Litigation, 2004 U.S. Dist. LEXIS 2247, *13-14 (S.D.N.Y. February 18, 2004).

Even if Plaintiff could establish a sufficient causal connection, the chain of causation was certainly broken by the criminal acts of Bayou and its principals, Samuel Israel and Daniel Marino. "[W]hen factors other than the defendant's fraud are an intervening direct cause of a plaintiff's injury, that same injury cannot be said to have occurred by reason of the defendant's actions." First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 769 (2d. Cir. 1994). Simply put, Plaintiff will not be able to plead that Defendants' alleged actions or omissions were the proximate cause of its alleged losses as any such alleged causal link is certainly broken by the criminal fraud perpetrated by Israel and Marino. See In re September 11 Litigation, 280 F. Supp.2d 279, 301-302 (S.D.N.Y. 2003) ("[g]enerally, an intervening intentional or criminal act severs the liability of the original tort-feasor"). Accordingly, Plaintiff's Section 10(b) and Rule 10b-5 claims should be dismissed because the Amended Complaint fails to adequately plead loss causation.

## IV. PLAINTIFF'S BREACH OF CONTRACT CLAIM AGAINST HENNESSEE GROUP FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

"To state a claim for breach of contract under New York law, a plaintiff must allege: (1) a contract; (2) performance of the contract by one party; (3) breach of the contract by the other; and (4) damages."  Universal Marine Medical Supply, Inc. v. Lovecchio et. al., 8 F. Supp. 2d 214 (E.D.N.Y., 1998) (internal citations omitted).

Dismissal of Plaintiff's breach of contract claim is proper for the following reasons: First, no written contract exits between Plaintiff and Hennessee Group and none is alleged. Second, to the extent that Plaintiff's claim is for breach of an oral contract, Plaintiff fails to allege facts demonstrating the existence or essential terms of any such oral contract, who from Hennessee Group caused it to be bound to the oral contract or when and how the alleged oral contract was entered into.  Finally, even assuming that the Amended Complaint adequately alleges the existence of an oral contract, Plaintiff's contract claim violates the statute of frauds because it is incapable of being performed in less than one year and constitutes a "contract to pay compensation for services rendered...in negotiating...a business opportunity...and partnership interest."  See N.Y. Gen. Obl. Laws § 5-701 (2006).

### A. No Contract Exists Between Plaintiff And Hennessee Group

It is undisputed that Plaintiff and Hennessee Group never entered into a written contract, e.g., an Investment Advisory Agreement.  Although not specifically stated in the Amended Complaint, Plaintiff's cause of action for breach of contract is presumably based upon an unspecified oral agreement.  In conclusory terms, Plaintiff alleges that Hennessee Group undertook an obligation to conduct initial due diligence and ongoing monitoring of Plaintiff's hedge fund investments and failed to do so.  Beyond these conclusory allegations and after

having the opportunity to file a second pleading, the Amended Complaint still fails to put Hennessee Group on notice of the essential terms of this alleged oral contract, when and how it was entered into, who from Hennessee Group was authorized to and entered into the "oral" contract on its behalf and at what point and how the "oral" contract was breached.  See Leadsinger, Inc. v. Cole, No. 05 Civ. 5606, 2006 WL 2320544, *10-11 (S.D.N.Y. Aug. 10, 2006) (dismissing breach of contract claim for failure to plead the essential terms of the contract, including the provisions upon liability was predicated).   The contractual terms upon which Plaintiff relies to allege a breach of contract are still based on representations allegedly made to Bollman, a non-party to this case, and those contained within the Investor Presentation.  See Am. Compl. at ¶¶ 12-21.

Plaintiff cannot rely on written or oral representations made to Bollman because he is not Plaintiff's agent for any purpose.  See Order Denying Defendants' Motion to Stay and Compel Arbitration at pp. 1-3, attached to Wolper Decl. as Ex. D.  For example, in paragraphs 12 through 20 of the Amended Complaint, Plaintiff outlines each step of Hennessee Group's due diligence process as allegedly communicated to Bollman at his meeting with Hennessee Group.  Plaintiff has not alleged (nor can it) that Plaintiff had an authorized representative present at this meeting. Despite this fact, Plaintiff contends that based on Hennessee Group's representations to Bollman regarding its due diligence process, which Plaintiff now contends was also communicated to Groothuis in the Investor Presentation, Plaintiff decided to invest in hedge funds recommended by Hennessee Group, including the Bayou Accredited Fund, LLC.  See Am. Compl. at ¶¶ 7-8, 23-35.

Representations allegedly made to Bollman certainly cannot be the basis for demonstrating a contract for Hennessee Group to conduct any level of due diligence of Plaintiff's

hedge fund investments.   Moreover, contrary to the representation made in the Amended
Complaint, the Investor Presentation neither outlines Hennessee Group's due diligence process
with the detail allegedly conveyed to Bollman nor constitutes an offer or contract to perform
advisory functions for Plaintiff.  See Gradante Decl at ¶ 3 and Ex. A at p. 23, attached thereto.
Simply put, Plaintiff is attempting to conceal the lack of any contract with Hennessee Group by
creating contractual terms that do not exist.   Accordingly, Plaintiff's breach of contract claim
should be dismissed because the Amended Complaint fails to allege the existence of an oral
contract, its essential terms, when and how the it was formed or breached, or who from
Hennessee Group caused it to be bound.

**B.    To The Extent The Amended Complaint Adequately Alleges The
Existence Of An Oral Contract, Enforcement Is Barred By The
Statute Of Frauds**

Even assuming that the Amended Complaint adequately alleges the existence of an oral
contract, Plaintiff's claim is nonetheless barred by New York's statute of frauds.  Section 5-701
of New York's General Obligations Laws ("Statute of Frauds") provides, in relevant part:

a. Every agreement, promise or undertaking is <u>void</u>, unless it or some note or
memorandum thereof be in writing, and subscribed by the party to be charged
therewith, or by his lawful agent, if such agreement, promise or undertaking:

1. By its terms is <u>not to be performed within one year from the
making thereof</u> or the performance of which is not to be
completed before the end of a lifetime;

****

10. <u>Is a contract to pay compensation for services rendered</u> in
negotiating a loan, or <u>in negotiating the purchase, sale</u>,
exchange, renting or leasing of any real estate or interest
therein, or <u>of a business opportunity</u>, business, its good will,
inventory, fixtures or an interest therein, including a majority
of the voting stock interest in a corporation <u>and including the
creating of a partnership interest</u>.   <u>"Negotiating" includes
procuring an introduction to a party to the transaction or
assisting in the negotiation or consummation of the transaction</u>.

> This provision shall apply to a contract implied in fact or in law to <u>pay reasonable compensation</u> but shall not apply to a contract to pay compensation to an auctioneer, an attorney at law, or a duly licensed real estate broker or real estate salesman.

<u>See</u> N.Y. Gen. Obl. Laws § 5-701 (2006) (emphasis added).

### 1.    *The Alleged Oral Contract Is Indefinite in Duration And Therefore Incapable Of Being Performed Within One Year*

According to the Amended Complaint, Hennessee Group provided Plaintiff with hedge fund consulting services beginning "sometime in the year 2000." <u>See</u> Compl. at ¶ 12.  Plaintiff alleges that, pursuant to an unspecified, presumably oral contract, Hennessee Group obligated itself to provide Plaintiff with initial due diligence and ongoing monitoring of Plaintiff's hedge fund portfolio for a fee.  <u>See</u> Am. Compl. at ¶ 21.

The oral contract upon which Plaintiff supposedly relies, is thus incapable of performance within one year and violates the Statute of Frauds for the following reasons.  First the oral contract is indefinite in duration and contains no express termination date.  <u>See</u> <u>Computech Int'l, Inc. v. Compaq Computer Corp.</u>, No. 02 Civ. 2628, 2002 WL 31398933, *3 (S.D.N.Y. Oct. 24, 20902) (holding that "contracts of indefinite duration are deemed to be incapable of being performed within a year, and thus fall within the ambit of the Statute of Frauds").  Second, "[t]he New York cases uniformly hold that implied termination terms are not sufficient to take an oral contract out of the statute."  <u>See</u> <u>United Magazine Co. v. Murdoch Magazines Distribution, Inc.</u>, 146 F. Supp.2d 385, 403-404 (S.D.N.Y. 2001), <u>quoting</u> <u>Burke v. Bevona</u>, 866 F.2d 532, 538 (2d Cir. 1989).  The Amended Complaint does not allege a termination date of the purported oral contract and continues to reference representations allegedly made to Plaintiff through 2005 regarding Bayou and other hedge funds.  <u>See</u> Am.

Compl. at ¶¶ 32-36, 38-43.  Thus, the alleged oral contract is incapable of performance within one year and is therefore barred by the Statute of Frauds.

> **2.** ***The Alleged Oral Contract Is A Contract For Services Rendered In Connection With The Negotiation Of A "Business Opportunity" And A "Partnership Interest"***

Under the express language of Section 5-701(a)(10), the oral contract is also barred by the statute of frauds because it is a contract for services rendered in connection with the negotiation of both a "business opportunity" and a "partnership interest."  "Negotiation," which is defined by the New York legislature as "procuring an introduction to a party to the transaction or assisting in the negotiation or consummation of the transaction" is precisely the job performed by Hennessee Group for its clients and what Hennessee Group is alleged to have done for Plaintiff.  See § 5-701(a)(10).

Plaintiff allegedly sought the consulting services of Hennessee Group in order to target potential hedge fund investments.  According to the Amended Complaint, Hennessee Group procured the introduction of the hedge funds in which Plaintiff ultimately invested, including the Bayou Accredited Fund, LLC.  See Am. Compl. at ¶¶ 7-8, 13, 22, 26, 28 and 32.  Only after Hennessee Group procured the introduction of a hedge fund did Plaintiff consummate the transaction by executing the subscription documents and transferring funds to the hedge fund manager.  Hennessee Group does not directly facilitate the transfer of money from a client to a given hedge fund—it simply makes the introduction.

This arrangement falls within the scope of negotiating both a "business opportunity" and a "partnership interest."  See Freedman v. Chemical Construction Corp., 43 N.Y.2d 260, 267 (1977) (holding that a "business opportunity" is intended to apply to situations where an "intermediary's activity is so evidently that of providing 'know-how' or 'know-who' in bringing

about between principals…an acquisition of a significant interest in an enterprise"); See Seneca Insur. Co., No. 95 Civ. 10701, 1996 WL 312230, *2-3 (S.D.N.Y. June 10, 1996) (noting the same).    The "business opportunity" is the prospect of investing in a hedge fund, i.e., an "enterprise," and the "partnership interest" is the resulting interest that was conveyed to Plaintiff as a result of each of its hedge fund investments.    Accordingly, because the purported oral contract was for the negotiation of a "business opportunity" and a "partnership interest" and was not reduced to writing, it is unenforceable under the statute of frauds.    Accordingly, Plaintiff's breach of contract claim should be dismissed.

## V.    PLAINTIFF'S BREACH OF FIDUCIARY DUTY CLAIM IS BARRED BY THE MARTIN ACT

New York's "blue sky" law, also known as the Martin Act, preempts common law claims for breach of fiduciary duty where, as here, the underlying dispute relates to the purchase or sale of securities and/or the rendering of investment advice "within or from" New York.  Castellano v. Young & Rubicam, Inc., 257 F.3d 171, 190 (2d Cir. 2001); Sedona Corp. v. Ladenburg Thalmann & Co., Inc., No. 03 Civ. 3120, 2005 WL 1902780, *21-23 (S.D.N.Y. Aug. 9, 2005).

The Martin Act provides the "New York Attorney General with the sole discretion to investigate [and prosecute] securities violations within or from the State of New York." Id. at 22.  Indeed, [t]he New York Court of Appeals has held that there is no private right of action under the Martin Act, and the vast majority of New York courts to consider the issue, as well as the Second Circuit, have extended that holding to preclude common law actions for breach of fiduciary duty and negligent misrepresentation where the alleged misdeeds fall within the purview of the Martin Act."  Louros v. Kriecas, 367 F.Supp.2d 572, 595 (S.D.N.Y. 2005); Castellano, 257 F.3d at 190; Gabriel Capital, L.P. v. Natwest Finance, Inc., 137 F. Supp.2d 251, 266-267 (S.D.N.Y. 2000).

In Sedona Corp., an action involving the providing of investment banking and capital financing services, the defendants moved to dismiss the plaintiff's causes of action for negligence, negligent misrepresentation and breach of fiduciary duty on the basis that said claims were precluded by the Martin Act. Sedona Corp., No. 03 Civ. 3120, 2005 WL 1902780, *21. The plaintiff opposed the motion to dismiss, asserting that the challenged conduct was outside the purview of the Martin Act because the defendants' alleged misrepresentations were made to the plaintiff at its Pennsylvania offices. Id. In dismissing plaintiff's claims for negligence, negligent misrepresentation and breach of fiduciary duty, this Court found there to be a "sufficient nexus to New York" in that the defendants "conducted many of the complained of transactions with Sedona via telephone and mailings (including Engagement Letter) from New York." Id. at 22. Additionally, the Court noted that plaintiff conceded in the venue contentions of the complaint that "a substantial part of the events or omissions giving rise to the claims" occurred in the Southern District of New York. Id.

Plaintiff alleges that Hennessee Group "breached its fiduciary duty as South Cherry's investment advisor" by recommending that Plaintiff invest in the Bayou Accredited Fund, LLC. See Am. Compl. at ¶ 52. The Amended Complaint further alleges that Hennessee Group made material misrepresentations to Plaintiff regarding its "due diligence" process, generally, and with respect to Bayou. See Am. Compl. at ¶¶ 12-35. While Hennessee Group denies that it owed any duty to or had any direct business dealings with Plaintiff or its purported principal, Fred Groothuis, all misrepresentations alleged in the Amended Complaint occurred "within or from" the state of New York. Hennessee Group is a New York limited liability corporation with its principal place of business in New York, all of Hennessee Group's principals and employees work and/or reside in New York and like the plaintiff in Sedona Corp., Plaintiff concedes that "a

substantial part of the events or omissions giving rise to this claim occurred in this judicial district," *i.e.*, the Southern District of New York. <u>See</u> Am. Compl. at ¶ 6. Thus, it is undisputed that the challenged conduct falls within the scope of the Martin Act. Accordingly, Plaintiff's breach of fiduciary duty claim is preempted by the Martin Act and should be dismissed.

### VI.    ALL CLAIMS SHOULD BE DISMISSED PURSUANT TO FRCP 12(b)(6) BECAUSE THE AMENDED COMPLAINT FAILS TO ALLEGE THAT DEFENDANTS OWED PLAINTIFF A DUTY TO PERFORM INITIAL OR ON-GOING DUE DILIGENCE OF ITS HEDGE FUND PORTFOLIO

According to the Amended Complaint, all representations allegedly made by Hennessee Group regarding its due diligence process were made to Bollman in-person and later repeated to Plaintiff in the Investor Presentation. However, as set forth above, the Investor Presentation is a "bare bones" marketing tool that does <u>not</u> contain anywhere near the level of detail described in the Amended Complaint or which was allegedly conveyed to Bollman. <u>See</u> Gradante Decl at ¶ 3 and Ex. A at p. 23, attached thereto. This is simply Plaintiff's attempt to create contractual terms where none exist. Thus, there are insufficient allegations that demonstrate the existence of a contract for Hennessee Group to perform "its detailed five level due diligence process, and the post-investment on-going due diligence process" with respect to <u>Plaintiff's</u> hedge fund investments. <u>See</u> <u>generally</u> Compl. Absent an express agreement to the contrary, Hennessee Group had no obligation to perform the specific functions on Plaintiff's behalf. <u>See</u> <u>Gabriel Capital, LP v. Natwest Finance, Inc.</u>, 137 F. Supp.2d 251, 263 (S.D.N.Y. 2000) (dismissing claims against investment advisor where there were insufficient allegations to suggest a duty was undertaken to perform the challenged functions); Am. Compl. at ¶¶ 12-22.

In <u>Gabriel</u>, the defendant/third-party plaintiff ("Natwest") sued the plaintiff's investment advisor for contribution and indemnification based on its failure to discover fraudulent statements contained within an offering memorandum and other written sales materials provided

839507_1

by Natwest, the initial purchaser of certain debit securities ("Notes"), to the plaintiff.  See

Gabriel, 137 F. Supp.2d at 258-259.  Natwest alleged that plaintiff's investment advisor had a

contractual, common law and statutory obligation to "[c]onduct a thorough and reasonable

investigation or review so as to learn all material facts…prior to purchasing such securities" and

"[c]ontinuously and actively monitor investments made on behalf of their customers…"  Id.  In

dismissing Natwest's third party claims against the plaintiff's investment advisor, the court

succinctly stated:

> No case relied on by NatWest Finance supports the proposition that Rule 10b-5 is
> violated when an investment advisor fails to investigate the accuracy of a
> representation in an offering memorandum, road show, or fails to inform its client
> that it will not investigate the accuracy of those representations.  Indeed, such a
> requirement should not be imposed.  An investment advisor is retained to suggest
> appropriate investments for its clients, but is not required to assume the role of
> accountant or private investigator and conduct a thorough investigation of the
> accuracy of the facts contained in the documents it analyzes for the purpose of
> recommending an investment.  The investment advisor is not the author of those
> documents and does not purport to certify the accuracy of those documents.  This
> Court will not impose such an obligation on the class of investment advisors.

Id. at 263.  Responding to the specific allegation that plaintiff's investment advisor was required

to uncover the fraudulent statements made within the offering memorandum, the court stated that

an investment advisor has no duty to conduct "an independent investigation as to the accuracy of

the statements made in an offering memorandum when there is nothing obviously suspicious

about those statements."  Id. at 262.

The Gabriel case is particularly instructive in this case where the Amended Complaint is

devoid of any allegations that Hennessee Group undertook an obligation to perform specific

functions with respect to Plaintiff's hedge fund portfolio.  Even if the Court accepts as true the

allegation that Hennessee Group recommended to Plaintiff that it invest in Bayou, there are no

allegations supporting the existence of a contract defining the nature and scope of the due

diligence to be performed on Plaintiff's behalf.  All of the causes of action pled in the Amended

Complaint are dependent upon the existence of some duty to perform initial and on-going due

diligence for Plaintiff to the same degree that was allegedly described to Bollman.  Plaintiff's

failure to adequately plead the nature and scope of Hennessee Group's duty to <u>Plaintiff</u> requires

dismissal of all the claims under the standard articulated in <u>Gabriel</u>.  Accordingly, Defendants

respectfully request that all claims be dismissed pursuant to FRCP 12(b)(6) for failure to state a

claim upon which relief can be granted.

<u>**CONCLUSION**</u>

Plaintiff has now filed two complaints in this action.  It is clear that Plaintiff can adduce

no set of facts that would allow it to adequately plead a cause of action against Defendants.  For

the foregoing reasons, Defendants respectfully request that the Court dismiss all claims in the

Amended Complaint <u>with prejudice</u>.

Dated: April 6, 2007

Respectfully submitted,

By: _____/S/_____
    Bennett Falk (BF 5539)
    Matthew C. Plant (MP 0328)
    Matthew E. Wolper (MW 8835)
    BRESSLER, AMERY & ROSS
    17 State Street, 34th Floor
    New York, New York  10004
    P: (212) 425-9300
    F: (212) 425-9337
    bfalk@bressler.com
    Attorney for Defendants
    Hennessee Group, LLC, Elizabeth Lee
    Hennessee and Charles Gradante

## CERTIFICATE OF SERVICE

I hereby certify that on April 6, 2007, a copy of *Defendants' Brief in Support of Their Motion to Dismiss the Amended Complaint* was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

_____
/S/
Matthew C. Plant (MP 0328)

839507_1