Westlaw.

Not Reported in F.Supp.2d                                                                                       Page 1
Not Reported in F.Supp.2d, 2004 WL 876050 (S.D.N.Y.), Fed. Sec. L. Rep. P 92,821
(Cite as: Not Reported in F.Supp.2d)

**H**
In re Vivendi Universal, S.A.
S.D.N.Y.,2004.

United States District Court,S.D. New York.
In re VIVENDI UNIVERSAL, S.A. Securities Litigation
LIBERTY MEDIA CORPORATION, LMC Capital LLC, Liberty Programming Company LLC, LMC USA VI, Inc., LMC USA VII, Inc., LMC USA VIIII, Inc ., LMC USA X, Inc., and Liberty HSN LLC Holdings, Inc., and Liberty Media International, Inc., Plaintiffs,
v.
VIVENDI UNIVERSAL S.A., Jean-Marie Messier, Guillaume Hannezo, and Universal Studios, Inc., Defendants.
No. 02 Civ. 5571(RJH), 03 Civ. 2175(RJH).

April 22, 2004.

OPINION
HOLWELL, J.
*1 This Opinion relates to:

Defendants Vivendi Universal S.A. ("Vivendi"), Jean-Marie Messier ("Messier"), Guillaume Hannezo ("Hannezo"), and Universal Studios, Inc. moved this Court in three separately-filed motions to dismiss the claims asserted in the action brought by plaintiffs Liberty Media Corporation and certain of its subsidiaries ("plaintiffs" or "Liberty Media"). Their motions are granted in part and denied in part, for the reasons set forth below and stated on the record in open court following oral argument on the motions held on April 1, 2004.

INTRODUCTION

Plaintiffs commenced this action on March 28, 2003 against Vivendi, a corporation organized under the laws of France; Messier, formerly the CEO and Chairman of Vivendi; and Hannezo, formerly the CFO of Vivendi; and Universal Studios, Inc., a subsidiary of Vivendi during the period relevant to this action. Plaintiffs assert federal and state law claims against defendants arising from a merger agreement entered into by the corporate parties in December 2001, pursuant to which Liberty Media exchanged shares of one of its subsidiaries for Vivendi shares. Plaintiffs allege that that Vivendi, Messier, Hannezo, and Universal Studios, Inc. (collectively "defendants") knew Vivendi faced a looming liquidity crisis in 2001, and that defendants concealed that crisis from plaintiffs during and following the negotiation of the merger agreement in order to keep the price of Vivendi stock artificially high and induce Liberty Media to consummate the deal. Plaintiffs further allege that, as a result of the transaction, they suffered economic losses following the inevitable decline in Vivendi's market value, and they seek damages and equitable relief against defendants. Defendants move to dismiss all of plaintiffs' claims pursuant to the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4, and under Rules 8, 9(b), 12(b)(1), and 12(b)(6) of the Federal Rules of Civil Procedure.

STANDARD OF REVIEW

In deciding a motion to dismiss, the court is required to accept as true the complaint's factual allegations and draw all inferences in the plaintiff's favor. "The court may not dismiss a complaint unless it appears beyond doubt, even when the complaint is liberally construed, that the plaintiff can prove no set of facts which would entitle him to relief." *DeMuria v. Hawkes,* 328 F.3d 704, 706 (2d Cir.2003) (citing *Scutti Enters. v. Park Place Entm't Corp.,* 322 F.3d 211, 214 (2d Cir.2003) and *Jaghory v. New York State Dep't of Educ.,* 131 F.3d 326, 329 (2d Cir.1997) (internal punctuation omitted)).

PLEADING STANDARDS

Plaintiffs bring federal securities fraud claims against all defendants pursuant to Section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j ("Exchange Act"), and Rule 10b-5 promulgated thereunder; claims against the individual defendants under Section 20(a) of the Securities Exchange Act, 15 U.S.C. § 78t; common-law fraud claims; and other state-law claims. Each of these categories of claims is gov-

Case 1:06-cv-02943-CM    Document 44-2    Filed 04/27/2007    Page 2 of 12

Not Reported in F.Supp.2d                                                                                        Page 2
Not Reported in F.Supp.2d, 2004 WL 876050 (S.D.N.Y.), Fed. Sec. L. Rep. P 92,821
(Cite as: Not Reported in F.Supp.2d)

erned by a distinct pleading standard. Section 10(b) claims based on allegations of defendants' fraudulent misstatements or omissions invoke the heightened pleading standard imposed by the PSLRA, which requires, first, that the complaint "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). Second, the PSLRA requires that a complaint alleging such claims state with particularity, "with respect to each act or omission, ... facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). See In re Initial Public Offering Sec. Litig., 241 F.Supp.2d 281, 329-34 (S.D.N.Y.2003) (holding that both paragraphs (b)(1) and (b)(2) of the PSLRA apply to Section 10(b) claims alleging misstatements or omissions, and PSLRA supersedes Fed.R.Civ.P. 9(b)'s pleading standards).

*2 Section 20(a) claims based on allegations that Messier and Hannezo were liable as controlling persons for violations of the Exchange Act are not subject to the PSLRA's heightened pleading standards, because scienter is not an essential element of a Section 20(a) claim. Nor are Section 20(a) claims subject to the pleading requirements of Fed.R.Civ.P. 9(b), since fraud is not an essential element of a Section 20(a) violation. Therefore, plaintiffs need only satisfy the notice pleading requirements of Fed.R.Civ.P. 8(a). See In re IPO Sec. Litig., 241 F.Supp.2d at 396-97.

Plaintiffs' common-law claims, which are not based on violations of the Exchange Act, are not subject to the PSLRA's pleading standards. Allegations of fraud and fraudulent concealment must meet the standards of Rule 9(b); allegations of breach of contract, breach of warranty, unjust enrichment, and negligent misrepresentation need only meet the standards of Rule 8(a).

FACTUAL ALLEGATIONS

The essential facts alleged by plaintiffs forming the basis for its complaint are straightforward. In late 2001, Vivendi sought to acquire USA Networks' entertainment assets, in which Liberty Media held an equity interest. In November and December 2001, Vivendi and Liberty Media discussed the proposed transaction, which took the form of a share exchange between the two entities. The discussions culminated in a comprehensive "Agreement and Plan of Merger and Exchange" executed on December 16, 2001 ("the Merger Agreement"). Plaintiffs allege that before and during the course of the negotiations, and after the execution of the Merger Agreement through June 2002, defendants actively concealed from plaintiffs a "massive and crippling liquidity crisis" at Vivendi, which only began to come to light when Vivendi's board of directors forced Messier to resign in July 2002. The resulting decline in Vivendi's stock value allegedly caused Liberty Media significant losses.

On the basis of these facts and related allegations, plaintiffs allege violations of Section 10(b) and Rule 10b-5 against Vivendi, Messier, and Hannezo; violations of Section 20(a) against Messier and Hannezo; breach of contract and breach of warranty against Vivendi and Universal; common-law fraud and fraudulent concealment against Vivendi, Messier, and Hannezo; and unjust enrichment and negligent misrepresentation against all defendants.

DISCUSSION

Defendants contend that plaintiffs have failed to plead facts sufficient to make out any of the claims alleged in their complaint. I address each claim in turn.

I. SECTION 10(b)

Defendants contend that plaintiffs have failed adequately to allege the essential elements of reasonable reliance, scienter, and loss causation necessary to make out a Section 10(b) claim against Vivendi, and that the complaint does not plead scienter or actionable misrepresentations or omissions against the individual defendants.

A. Reliance-Vivendi [FN1]

FN1. Individual defendants Messier and Hannezo do not make sustained arguments

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:06-cv-02943-CM   Document 44-2   Filed 04/27/2007   Page 3 of 12

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 876050 (S.D.N.Y.), Fed. Sec. L. Rep. P 92,821
(Cite as: Not Reported in F.Supp.2d)

Page 3

regarding reliance, save for a short subsection in the section of Messier's brief addressing Liberty Media's common-law fraud claims. Messier's arguments as to reliance are referred to where relevant.

*3 Defendants argue that plaintiffs' Section 10(b) claim must be dismissed because (1) plaintiffs cannot establish reasonable reliance on any statement outside the warranties and representations contained in the Merger Agreement; (2) plaintiffs may not claim reliance on any representations or omissions made after the agreement was signed; and (3) plaintiffs have failed properly to plead Section 10(b) violations based upon the statements embraced by the warranties and representations in the agreement.

Defendants' first contention is that only the representations expressly identified in Section 3 of the Merger Agreement may be reasonably relied upon by Liberty Media because of the integration clause in the agreement stating that "no covenant, representation or condition not expressed in this Agreement shall affect, or be effective to interpret, change or restrict, the express provisions of this Agreement." Slifkin Decl. Ex. 1, 43.[FN2] The case law is clear, particularly in light of the Second Circuit's decision in *Emergent Capital Inv. Mgmt., L.L.C. v. Stonepath Group, Inc.,* 343 F.3d 189 (2d Cir.2003), that a standard merger clause may limit reasonable reliance for Section 10(b) purposes to those representations actually made in the contract documents. In the instant case, those representations are set forth primarily in §§ 3.08 and 3.11 of the Merger Agreement.

   FN2. Defendant Messier joins in this argument; *see* Messier Mem. 20.

Plaintiffs counter this contention on two fronts. First, they argue that under the rule of *Harsco Corp. v. Segui,* 91 F.3d 337 (2d Cir.1996), there must be an express disclaimer of reliance on the disputed representations in order for reliance on those representations to be unreasonable as a matter of law. In that case, plaintiff alleged reasonable reliance on a representation by defendants that was in the class of representations specifically disclaimed in the integration clause in the purchase agreement at issue, and the court held that such reliance was not reasonable. *Harsco,* 91 F.3d at 345-46. However, the *Emergent* court articulates a more expansive view of the impact of an integration clause on reasonable reliance. Acknowledging *Harsco,* that court nonetheless held that reasonable reliance must be assessed by considering "the entire context of the transaction, including factors such as its complexity and magnitude, the sophistication of the parties, and the content of any agreements between them." *Emergent,* 343 F.3d at 195. In so holding, the Second Circuit affirmed the trial court's statement that "[e]ven if an integration clause is general, a fraud claim will not stand where the clause was included in a multi-million dollar transaction that was executed following negotiations between sophisticated business people and a fraud defense is inconsistent with other specific recitals in the contract." *Emergent Capital Inv. Mgmt., L.L.C. v. Stonepath Group, Inc.,* 165 F.Supp.2d 615, 622 (S.D.N.Y.2001). Therefore, when a contract is between two sophisticated parties such as those in *Emergent,* reliance is unreasonable not merely on expressly disclaimed representations, but also on representations that a knowledgeable party should have insisted on including in the agreement but that were not included.

*4 Plaintiffs' citation to *Mfrs. Hanover Trust Co. v. Yanakas,* 7 F.3d 310 (2d Cir.1993), which states that in determining reasonable reliance in the context of an integration clause, "the touchstone is specificity," *id.* at 316, is similarly unavailing. The Merger Agreement at issue in this action is quite specific in identifying the representations warranted by the parties: it contains no fewer than nineteen such representations. Thus, in this case, which involves two sophisticated and experienced parties negotiating at arm's length, Liberty Media may not rely on extra-contractual representations such as verbal or written statements by defendants or others, or any representation not embodied or referred to in the Merger Agreement. This does not defeat plaintiffs' Section 10(b) claim, however, since plaintiffs allege that the representations actually made by Vivendi in Section 3 of the Merger Agreement were false or misleading or contained material omissions when made and, therefore, fall outside the holding of *Emergent.* Moreover, this

Case 1:06-cv-02943-CM   Document 44-2   Filed 04/27/2007   Page 4 of 12

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 876050 (S.D.N.Y.), Fed. Sec. L. Rep. P 92,821
(Cite as: Not Reported in F.Supp.2d)

Page 4

issue is something of a tempest in a teapot since plaintiff has not identified any extra-contractual representations prior to the execution of the Merger Agreement that would not be subsumed within the scope of the financial representations made in Section 3 of the Merger Agreement.

Defendants' second contention is that plaintiffs' claims with respect to misrepresentations or omissions made after the execution of the Merger Agreement on December 16, 2001, must be dismissed. Section 10(b) of the Exchange Act applies to misstatements or omissions made only "in connection with the purchase or sale of any security." 15 U.S.C. § 78j. This means, defendants argue, that statements made after the agreement was signed are not actionable. This is clearly true and does not in fact appear to be denied by plaintiffs, who in the complaint base their Section 10(b) claim on allegations that defendants "issu[ed] materially false and misleading statements during the relevant period leading up to and during negotiations" toward the agreement. It appears that plaintiffs' recital of defendants' statements and actions following the execution of the agreement serves as "evidence of Defendants' ongoing deceit and fraud on the market," Pls.' Opp'n to Mot. of Defts. Vivendi Universal S.A. and Universal Studios, Inc. to Dismiss the Compl. ("Pl.Viv.Opp'n"), 15-16 n. 7, and such statements are not alleged as actionable misrepresentations. To the extent that this point is not disputed, and to the extent that plaintiffs do not rely upon post-signing representations in their allegations of reasonable reliance, this contention cannot be a basis for dismissal.

Defendants' third contention is that plaintiffs have not properly pled that statements covered by Vivendi's express representations and warranties in the Merger Agreement were false or misleading or contained material omissions when made. The representations and warranties at issue are those made in Vivendi's 2000 Form 20-F (warranted to in the agreement, §§ 3.08 and 3.11); and in Vivendi's press releases dated March 9, 2001; April 23, 2001; July 22, 2001; September 25, 2001; and October 30, 2001 (warranted to by § 3.11).[FN3]

> FN3. Plaintiffs also allege misrepresenta-tions and omissions in Forms 6-K submitted by Vivendi to the SEC both prior to and subsequent to the execution of the Merger Agreement. Defendants argue that Forms 6-K are not warranted to in the Merger Agreement, because they are not "filed with," but rather are "furnished to," the SEC, and therefore they are not among the "documents required to be filed" by Vivendi that are warranted to in § 3.11. However, whether the parties intended to exclude Form 6-K documents because they are "furnished to" but not "filed with" the SEC raises an issue of fact that may not be disposed of on a motion to dismiss.

*5 The material omissions alleged by plaintiffs include (1) failure to disclose the sale of put options to banks; (2) failure to disclose the repurchase of 104 million Vivendi shares; (3) failure to disclose an impairment to goodwill; (4) failure to disclose credit ratings clauses in Vivendi's debt instruments that could have an impact on the availability of credit lines and accelerate certain maturity dates; (5) failure to disclose Vivendi's narrow avoidance of a downgrade in its investment status by the credit rating agencies; and (6) a general failure to disclose a "liquidity crisis" that existed prior to the execution of the agreement. Each alleged omission is discussed below.

(1) Vivendi argues that the put option sales were disclosed prior to the signing of the Merger Agreement, and that therefore this was not an actionable omission. The put options were disclosed in Vivendi's Annual Report filed with the Commission des Operations de Bourse ("the COB"), France's securities regulatory agency, on April 17, 2001. The fair value of these put options was further disclosed in Vivendi's 2000 Form 20-F, filed on July 2, 2001. Slifkin Decl. Ex. 4, F-32. Plaintiffs argue that even if the put options were disclosed, this is not an adequate basis for a motion to dismiss because factual questions remain as to a "truth on the market" defense and whether the disclosure was made with the degree of intensity and credibility sufficient to counter-balance any prior misleading statements. However, the truth on the market defense has nothing to do with plaintiffs' indi-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:06-cv-02943-CM   Document 44-2   Filed 04/27/2007   Page 5 of 12

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 876050 (S.D.N.Y.), Fed. Sec. L. Rep. P 92,821
(Cite as: Not Reported in F.Supp.2d)

Page 5

vidual claims, which turn on the representation made to them, not to the marketplace. Plaintiffs' allegation that the put options were not disclosed to them is contradicted by the very documents they rely on in bringing their complaint. Therefore, this claim is subject to dismissal under Rule 12(b)(6).

(2) Vivendi also maintains that the share repurchase program was disclosed, and that therefore this was not an actionable omission. Vivendi's plan to repurchase its shares in 2001 was disclosed at its annual shareholders' meeting in September 2000 and to the COB in October 2000; the actual share repurchases were documented in monthly reports to the Conseil des marchés financiers ("the CMF") and the COB in 2001. Viv. Mem. 8. Plaintiff asserts that the disclosure was insufficient because Vivendi never disclosed the timing and amount of the repurchases. Pl. Viv. Opp'n 9. This appears to be incorrect, as Vivendi's monthly reports to the CMF contained this information. Slifkin Decl. Ex. 7. Since there is no factual basis for this allegation, defendants' motion to dismiss will be granted as to the share repurchase program.

(3) Vivendi further contends that the goodwill writedown was disclosed as required under French and U.S. Generally Accepted Accounting Practices ("GAAP"). The disclosure was made in its 2001 year-end accounts under French GAAP as of December 31, 2001. Slifkin Decl. Ex. 9, F-51. The goodwill impairment was thereafter recognized and reported under U.S. GAAP in the first quarter of 2002. Slifkin Decl. Ex. 8, F-57. Plaintiffs concede that disclosures were made, but argue that the ultimate issue is not whether defendants complied with the disclosure requirements under French and U.S. GAAP in the first quarter of 2002, but rather whether Vivendi concealed material information regarding its precarious financial condition from plaintiffs prior to the Merger Agreement. Pl. Viv. Opp'n, 10. In this regard, Plaintiffs allege that Vivendi had, in fact, significantly overvalued its goodwill at the time the Merger Agreement was signed, and then attempted to downplay that fact when it came to light. Compl. ¶ 56. As such, these allegations are actionable to the extent that they properly plead fraudulent conduct. In ruling on the motion to dismiss the consolidated class action complaint with which this action has been consolidated, Judge Baer similarly found that "[i]n view of the large impairments taken immediately after the departure of key figures in Vivendi's management, a reasonable inference can be drawn that Vivendi had reasonable grounds to believe the impairments had to be reported and that former management concluded not to do so." *In re Vivendi Universal S.A.*, No. 02 Civ. 5571(HB), 2003 WL 22489764, at *12 (S.D.N.Y. Nov. 3, 2003). These alleged omissions may not be dismissed at this stage.

*6 (4) Vivendi claims that plaintiffs have not adequately alleged a failure to disclose credit ratings clauses that were found in certain of Vivendi's loan agreements. While plaintiffs allege that Vivendi's 2000 Form 20-F was misleading because it lacked such disclosure, defendants counter that plaintiffs failed to plead this failure to disclose with requisite particularity because it does not identify which specific part of the Form 20-F was misleading by virtue of the disclosure, not why, when, and to what extent such nondisclosure was misleading. Viv. Mem. 13. Plaintiffs specifically allege that Vivendi omitted information from its 2000 Form 20-F that Item 5.B of the General Instructions to Form 20-F requires filers to provide, *e.g.*, relevant information about liquidity, available working capital, level of borrowings, and restrictions on certain transfers and uses of available funds (including the acceleration clauses that would bring certain of Vivendi's major loans to maturity if Vivendi's credit ratings were downgraded). Compl. ¶ 57. While defendants contend that the complaint does not support plaintiffs' assertion that the credit ratings clauses affected the sufficiency of Vivendi's working capital in late 2001, or that the credit ratings clauses operated as a restriction on transfers or use of borrowings, Viv. Mem. 13, it appears self-evident that credit ratings triggers that could dramatically affect the cash flow of a company may, depending on the circumstances, be relevant to that company's filings as to its liquidity and capital resources. The court notes that Vivendi's Form 20-F for 2001 (filed on May 28, 2002) does disclose the existence of acceleration clauses, which in some evidence that the company thought this information was of interest to shareholders at that time. It remains to be seen

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:06-cv-02943-CM   Document 44-2   Filed 04/27/2007   Page 6 of 12

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 876050 (S.D.N.Y.), Fed. Sec. L. Rep. P 92,821
(Cite as: Not Reported in F.Supp.2d)

Page 6

whether, following discovery, a sophisticated investor (who likely had similar clauses in its loan agreements) will be able to show that it was defrauded by the omission of that information in the Form 20-F for 2000. In any event, the pleadings are specific enough about the where, why, and how of the alleged omission to survive a motion to dismiss.

(5) Vivendi argues that plaintiffs do not explain why defendants were obligated to disclose the possibility of a ratings downgrade that did not occur. However, the narrow avoidance of this downgrade-especially in light of the handwritten memo defendant Hannezo sent to defendant Messier in apparent response to this near-miss, in which he compared himself to a passenger in the "death seat" of a car "whose driver is accelerating in the turns," Compl. ¶ 34-creates an inference of a growing liquidity crisis at Vivendi, of which defendants were aware, and which if true would require a factual inquiry to determine whether it was wrongfully omitted from the information provided to Liberty Media.

(6) Vivendi asserts that plaintiffs' allegations of a "liquidity crisis" constitute pleading fraud by hindsight. However, as Judge Baer observed in upholding the class action complaint, the Second Circuit has explicitly recognized that plaintiffs may rely on post-class period data to confirm what a defendant should have known during the class period." *Vivendi, 2003 WL 22489764, at \*16* (citing *In re Scholastic Corp. Sec. Litig., 252 F.3d 63, 72 (2d Cir.2001); Rothman v. Gregor, 220 F.3d 81, 92 (2d Cir.2000); Novak v. Kasaks, 216 F.3d 300, 312-13 (2d Cir.2000)*). Moreover, Judge Baer correctly observed that the "truth on the market" argument offered by defendants creates an issue of fact as to whether the "corrective information [was] conveyed to the public with a degree of intensity and credibility sufficient to counterbalance effectively any misleading information created by the alleged misstatements." *Id.* (citations and internal punctuation omitted). Here, the allegations raise a question that cannot be disposed of on a motion to dismiss as to whether the liquidity problems that began to emerge after the Liberty Media deal closed, existed and were known of by defendants, but were not adequately revealed during the period prior to the execution of the Merger Agreement.

*7 In addition to the foregoing omissions, Defendants also seek to dismiss Section 10(b) claims based on certain affirmative representations wherein Vivendi reported "very strong results" and expressed confidence that it was "on track" to achieve earnings targets (Compl.¶¶ 26-31). Defendants argue that these statements-included in press statements that were among the representations warranted under § 3.11 in the Merger Agreement-are inactionable puffery and/or that they fall within the safe harbor under the PSLRA for forward-looking statements. In the motion to dismiss the class action complaint, defendants made similar arguments as to many of the same statements alleged in the instant complaint, and the court declined to dismiss the allegations on either ground. First, noting that "soft information" such as that alleged here can be actionable if the plaintiff alleges facts showing that the speaker did not "genuinely or reasonably believe [the statements] at the time they were made," *Vivendi, 2003 WL 22489764, at \*17* (citing cases), Judge Baer found that plaintiffs had pled sufficient facts to create a strong inference that defendants did not reasonably believe their own statements at the time they were made. Second, noting that the PSLRA "safe harbor" provision immunizes securities fraud defendants from liability if their forward-looking statements are identified as such and are accompanied by meaningful cautionary statements, *id.* at \*17, Judge Baer found that "to the extent that the announcements contain forward-looking statements, the cautionary statements do not suffice to place them within the ambit of the safe-harbor provision in the PSLRA." *Id.* at \*18. For largely the same reasons relied upon by Judge Baer in the lead case, claims based on defendants' alleged misrepresentations in public statements should not be dismissed.

*B. Loss Causation-Vivendi*

Defendants claim that Plaintiffs have failed to plead loss causation. A complaint brought under Section 10(b) adequately pleads loss causation when it contains allegations that plaintiff's securities-related economic injury is causally linked to defendant's misstatements or omissions. *Emergent, 343 F.3d at 197; N.A. v. K-H Corp., 968 F.2d 1489, 1496 (2d Cir.1992); see also Suez Equity Investors, L.P. v.*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:06-cv-02943-CM   Document 44-2   Filed 04/27/2007   Page 7 of 12

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 876050 (S.D.N.Y.), Fed. Sec. L. Rep. P 92,821
(Cite as: Not Reported in F.Supp.2d)

Page 7

*Toronto-Dominion Bank*, 250 F.3d 87, 98 (2d Cir.2001) (finding loss causation adequately pled when "complaint ... alleges that plaintiffs suffered a loss at the time of purchase since the value of the securities was less than that represented by defendants"). Vivendi claims that plaintiffs have failed to plead loss causation because, they argue, plaintiffs have not adequately alleged that defendants' misrepresentations or omissions proximately caused a decline in the value of plaintiffs' security. Viv. Mem. 18. Typically, Vivendi states, a "corrective disclosure" is pled that leads to a price decline, thereby constituting the proximately-caused loss. *Id.* Here, Vivendi argues, plaintiffs have failed to show that defendants' post-merger public statements were corrective disclosures rather than just "subsequent bad news." *Id.* at 18-19. However, paragraph 43 of the complaint, fairly read, alleges that a series of corrective disclosures led to a material price decline. And paragraph 54, fairly read, attributes that decline to the series of corrective disclosures. Consequently, the complaint adequately alleges loss causation.

### C. Scienter-All Defendants

*8 Defendants contend that plaintiffs have failed to plead scienter. The PSLRA provides that plaintiffs may establish scienter by stating with particularity facts that give rise to a strong inference that the defendant acted with the requisite state of mind. This strong inference can arise either from (1) allegations of facts constituting strong circumstantial evidence of conscious misbehavior or recklessness, or from (2) allegations of facts showing that defendants had both motive and opportunity to commit fraud. *See Kalnit v. Eichler*, 264 F.3d 131, 138 (2d Cir.2001). As to the first prong, Plaintiffs have made specific allegations (including the "death seat" memo from Hannezo to Messier, and the alleged non-disclosure of information to the Board of Directors), that defendants were aware of or recklessly disregarded the impending crisis during the time in question. The complaint does more than show that "defendants should have anticipated future events and made certain disclosures earlier than they actually did," *Novak*, 216 F.3d at 309; therefore, the complaint may not be dismissed on this ground.

As to the second prong, Vivendi argues that plaintiffs make only general allegations of motive possessed by virtually all corporate insiders, and that such allegations are inadequate to plead motive and opportunity. Viv. Mem. 20. "Motives that are generally possessed by most corporate directors and officers do not suffice; instead, plaintiffs must assert a concrete and personal benefit to the individual defendants resulting from the fraud." *Novak*, 216 F.3d at 307-08. Plaintiffs counter that they adequately allege motive and opportunity, which must meet the standard articulated in *Chill v. Gen. Elec. Co.*, 101 F.3d 263, 267 n. 4 (2d Cir.1996), *viz.*, that plaintiffs must allege that defendants had the "means and likely prospect of achieving concrete benefits by the means alleged." Pl. Messier/Hannezo Opp'n 8-9. The line between generally held motivations and those that are concrete and personal enough to meet the level of "motive and opportunity" required to show scienter is not a bright one. However, the Second Circuit "has ruled that stock price manipulation in the acquisition context may be sufficient to establish scienter, and has rejected the proposition that 'the desire to consummate any corporate transaction cannot ever be a motive for securities fraud.'" *Kalnit*, 264 F.3d at 139 (citing *Rothman*, 220 F.3d at 93-94 (citing *In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 270 (2d Cir.1993))). *See also In re Interpublic Sec. Litig.*, No. 02 Civ. 6527, 2003 WL 21250682 (S.D.N.Y. May 29, 2003) (decision on motion to dismiss) ("A desire to acquire other companies through the use of stock as consideration ... may be a sufficient allegation of scienter in connection with misrepresentations or omissions that are alleged to have inflated the company's stock price.").

Plaintiffs allege that Messier, through Vivendi, wanted to create an entertainment empire, Compl. ¶¶ 18-19, and that defendants defrauded Liberty Media into entering an agreement in order to attain that goal. Compl. ¶¶ 19, 22. Defendants characterize plaintiffs' allegations of motive differently: they emphasize the allegation that defendants wanted to "inflate the value of Vivendi shares" or "prop up stock prices," Viv. Mem. 20. It is true that this, in itself, would not be adequate to plead scienter. But it ignores the larger empire-oriented motives alleged in the complaint to which the alleged goal of propping up stock prices is

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:06-cv-02943-CM   Document 44-2   Filed 04/27/2007   Page 8 of 12

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 876050 (S.D.N.Y.), Fed. Sec. L. Rep. P 92,821
(Cite as: Not Reported in F.Supp.2d)

Page 8

merely instrumental. Here, the alleged motive is larger than the mere manipulation of stock prices. At stake, according to the complaint, was the ability of Vivendi to maintain and expand its enterprise, an aim that is clearly distinguishable from the more general motives that have been held insufficient to support scienter. The pleading of scienter by motive and opportunity is adequate to survive a motion to dismiss.

*D. Primary Liability of Defendants Messier and Hannezo*

**\*9** Defendants Messier and Hannezo contend that the complaint fails to allege any actionable misrepresentations or omissions made by them.

A review of the complaint shows that plaintiffs have adequately alleged that both defendants made misstatements in violation of Rule 10b-5. Thus defendants Messier is alleged to have made numerous statements in press releases prior to the execution of the Merger Agreement which, for the reasons previously stated, are actionable under Rule 10b-5. Defendant Hannezo concedes that Vivendi's financial statements are attributable to him as CFO and, also, for the reasons previously stated, the alleged misstatements and omissions in these statements are actionable under Rule 10b-5.

With regard to allegations of fraudulent misstatements not attributed directly to the individual defendants but attributed to Vivendi or "defendants" generally, I adopt the reasoning of Judge Baer in Section I of his opinion. *Vivendi,* 2003 WL 22489764, at *25-26. Neither the Supreme Court's decision in *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,* 511 U.S. 164, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994), nor the Second Circuit's decisions in *Shapiro v. Cantor,* 123 F.3d 717 (2d Cir.1997) or *Wright v. Ernst & Young L.L.P.,* 152 F.3d 169 (2d Cir.1998), preclude the imposition of primary liability not only on persons who made fraudulent representations but also those who are alleged to have known of the fraud and participated in its perpetration. See *S.E.C. v. First Jersey Sec., Inc.,* 101 F.3d 1450, 1471 (2d Cir.1996); *S.E.C. v. U.S. Environmental, Inc.,* 155 F.3d 107, 111 (2d Cir.1998); *Rich v. Maidstone Financial, Inc.,* 2002 WL 31867724 (S.D.N.Y. Dec. 20, 2002); and *Polar Int'l Brokerage Corp. v. Reeve,* 108 F.Supp.2d 225, 237-38 (S.D.N.Y.2000).

## II. SECTION 20(a) "CONTROLLING PERSON" LIABILITY

While certain allegations against "Vivendi" or "defendants" may not provide a basis for proceeding against Messier or Hannezo on a primary liability theory, the complaint also alleges "controlling person" liability under Section 20(a) of the Exchange Act against the individual defendants. The pleading standard for controlling person liability differs from that of primary liability under Section 10(b). "In order to establish a claim for control person liability under Section 20(a), plaintiffs must establish (1) a primary violation of the 1934 Act, (2) control of the primary violator by the [allegedly controlling] defendant, and (3) the defendant's culpability in the fraud perpetrated by the controlled person." *Rubinstein v. Skyteller, Inc.,* 48 F.Supp.2d 315, 322-23 (S.D.N.Y.1999) (citing *Novak,* 997 F.Supp. at 435 (citing *First Jersey,* 101 F.3d at 1472)). The SEC defines "control" as "the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise." 17 C.F.R. § 230.405. Defendants Messier and Hannezo contend that plaintiffs have failed to allege (1) that Messier and Hannezo are "controlling persons" for the purposes of § 20(a), and (2) "culpable participation" by Messier and Hannezo. Messier Mem. 17-18; Hannezo Mem. 16-18. In support of the former contention, both Messier and Hannezo cite to cases in this jurisdiction that have held that a person's status as a director, officer or shareholder is in itself insufficient to allege controlling person status. Yet the complaint does much more than merely recite Messier's and Hannezo's corporate titles, contrary to what defendants imply; it contains allegations that Vivendi was Messier's "brainchild and pet project," Compl. ¶ 18; that Messier himself had the idea of acquiring USA Networks through a transaction with Liberty Media "as a means to improve Vivendi's undisclosed cash-flow difficulties," Compl. ¶ 19; and that both Messier and Hannezo participated in the promulgation of false statements in

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:06-cv-02943-CM   Document 44-2   Filed 04/27/2007   Page 9 of 12

Not Reported in F.Supp.2d                                            Page 9
Not Reported in F.Supp.2d, 2004 WL 876050 (S.D.N.Y.), Fed. Sec. L. Rep. P 92,821
(Cite as: Not Reported in F.Supp.2d)

furtherance of the primary violations, Compl. ¶¶ 21, 23. This court has found that allegations allowing a reasonable inference that the alleged controlling person "had the potential power to influence and direct the activities of the primary violator" sufficed to state a claim for controlling person liability. *Primavera Familienstiftung v. Askin,* No. 95 Civ. 8905(RWS), Fed. Sec. L. Rep. (CCH) P99, 1996 U.S. Dist. LEXIS 12683, at *30-31 (S.D.N.Y. August 22, 1996) (citing *Borden, Inc. v. Spoor Behrins Campbell & Young, Inc.,* 735 F.Supp. 587, 591 (S.D.N.Y.1990) (internal punctuation omitted). That standard is easily met in the present case.

*10 Similarly unavailing is defendants' argument that plaintiffs have not adequately pled culpable participation. According to the Second Circuit, allegations of Section 20(a) liability must "show that the controlling person was 'in some meaningful sense a culpable participant in the fraud perpetrated by the controlled person." *Ganino v. Citizens Utilities Co.,* 228 F.3d 154, 170 (2d Cir.2000) (citing *First Jersey,* 101 F.3d at 1472); *Boguslavsky v. Kaplan,* 159 F.3d 715, 720 (2d Cir.1998) (same). *See also In re Deutsche Telekom AG Sec. Litig.,* No. 00 Civ. 9475(SHS), 2002 WL 244597, at *7 (S.D.N.Y. Feb. 20, 2002) (plaintiff must plead facts with "sufficient particularity that a strong inference is raised that the section 20(a) control person knew or should have known that the controlled person was engaging in fraudulent conduct"). The Second Circuit in *Suez Equity* implied that culpable participation need not be pled with particularity, so long as claims of culpable participation are not merely conclusory. *Suez Equity,* 250 F.3d at 101-02. Here, plaintiffs have done more than make merely conclusory allegations of participation. They have alleged that Messier, as a controlling person, issued statements and took other actions to conceal Vivendi's growing liquidity crisis; they have alleged that Hannezo, as a controlling person, executed materially false and misleading financial statements. Therefore, plaintiffs' allegations suffice to state a claim under Section 20(a) against Messier and Hannezo, and these claims may not be dismissed.

### III. STATE LAW CLAIMS

Plaintiffs allege several common-law claims under New York law, including breach of contract/breach of warranty against Vivendi and Universal Studios, Inc.; fraud and fraudulent concealment against Vivendi, Messier and Hannezo; unjust enrichment against all defendants; and negligent misrepresentation against all defendants. Each is discussed below.

#### A. Breach of Contract/Breach of Warranty

Plaintiffs allege that the Merger Agreement that Liberty Media, Vivendi, and certain subsidiaries (including defendant Universal Studios, Inc.) entered into contained express warranties about Vivendi's financial condition that were material to the bargain, and that the corporate defendants' breach of their warranties proximately caused damage to the plaintiffs.

In order to make out a claim of breach of contract under New York law, plaintiff must show the existence of an agreement, plaintiff's adequate performance under the contract, defendant's breach of the contract, and damages. *Tagare v. Nynex Network Sys. Co.,* 921 F.Supp. 1146, 1149 (S.D.N.Y.1996); *see also* 5 Wright & Miller, *Federal Practice & Procedure* § 1235 (1990); *Harsco,* 91 F.3d at 348. Under New York law, breach of an express warranty is proven by showing the existence of an express warranty, reliance on that warranty as part of the agreement between the parties, and that the warranties were false or misleading when made, proximately causing plaintiff's loss. *Rogath v. Siebenmann,* 129 F.3d 261, 264 (2d Cir.1997) (citing *CBS Inc. v. Ziff-Davis Publishing Co.,* 75 N.Y.2d 496, 554 N.Y.S.2d 449, 553 N.E.2d 997 (1990).

*11 The Court finds that under the Rule 8(a) pleading standard applicable to this claim, plaintiffs have adequately alleged breach of contract and breach of warranty. The contention of the corporate defendants that no actionable representations are at issue here is rejected for the same reason it was rejected in Section I.A. *supra*.

#### B. Fraud and Fraudulent Concealment

Plaintiffs' common-law fraud and fraudulent concealment claims essentially track their Section 10(b) claims. They allege that defendants falsely represented Vivendi's financial condition, falsely portrayed

Case 1:06-cv-02943-CM     Document 44-2     Filed 04/27/2007     Page 10 of 12

Not Reported in F.Supp.2d                                                                                                                                Page 10
Not Reported in F.Supp.2d, 2004 WL 876050 (S.D.N.Y.), Fed. Sec. L. Rep. P 92,821
(Cite as: Not Reported in F.Supp.2d)

financial statements and other public documents, falsely represented that no material change had occurred in Vivendi's financial condition, and falsely stated that Vivendi had complied with all applicable laws; that defendants did so with scienter; that defendants had a duty to disclose what they knew, by the terms of the Merger Agreement, and because of defendants' superior knowledge, but knowingly failed do so; and plaintiffs reasonably relied to their detriment.

In order to show common-law fraud, plaintiffs must show a material false representation or omission of an existing fact, which defendants made with knowledge of its falsity and intent to defraud, and which plaintiffs relied upon to their detriment. *Kline v. Taukpoint Realty Corp.,* 302 A.D.2d 433, 433, 754 N.Y.S.2d 899 (2d Dep't 2003) (citing *Vermeer Owners v. Guterman,* 78 N.Y.2d 1114, 578 N.Y.S.2d 128, 585 N.E.2d 377 (1991)). Fraudulent concealment also requires a duty to disclose, which can arise from a fiduciary relationship between parties or, absent such a relationship, "if: (1) one party makes a partial or ambiguous statement that requires additional disclosure to avoid misleading the other party; or (2) one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge. In either case, a disclosure duty ripens only when it becomes apparent to the non-disclosing party that another party is operating under a mistaken perception of a material fact." *Remington Rand Corp. v. Amsterdam-Rotterdam Bank, N.V.,* 68 F.3d 1478, 1484 (2d Cir.1995) (citing cases).

Defendants' various objections to this claim do not persuade the Court. First, defendants claim that no actionable misrepresentations are alleged against the individual defendants or Vivendi, a contention that the Court rejected with respect to the Section 10(b) claims. Second, Vivendi argues that the representations and warranties at issue are set forth in a contract, foreclosing any special relationship claim. Yet under New York law, a claim of fraud for breaching representations and warranties provided by a contract may be sufficient as long as the complaining party can "(i) demonstrate a legal duty separate from the duty to perform under the contract; or (ii) demonstrate a fraudulent misrepresentation or breach collateral or extraneous to the contract; or (iii) seek special damages that are caused by the misrepresentations and breaches and are unrecoverable as contract damages." *DynCorp v. GTE Corp.,* 215 F.Supp.2d 308, 324 (S.D.N.Y.2002) (citing *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.,* 98 F.3d 13, 20 (2d Cir.1996) (restating New York law)). When, as here, a warranty provided by a contract makes representations as to present facts, such facts are extraneous to the contract and may be the basis of a cause of action separate from breach. By the same token, Vivendi's argument that fraudulent inducement is not actionable when breach of contract is also alleged is inaccurate, since the claims are only incompatible when the fraud cited by plaintiffs is that defendants never intended to perform. "New York law distinguishes between a prospective business partner's promissory statements as to what will be done in the future, which give rise only to a breach of contract claim, and his or her false representations of present fact, which give rise to a separable claim of fraudulent inducement." *Doehla v. Wathne Limited, Inc.,* No. 98 Civ. 6087(CSH), 1999 WL 566311, *14 (S.D.N.Y. Aug. 3, 1999). Therefore, when misrepresentation of a present fact, as opposed to a future intention, is alleged, fraudulent inducement may be alleged together with contract claims. Finally, the individual defendants' contentions that they had no duty of disclosure cannot justify dismissal of these claims, since superior knowledge has been alleged against both Messier and Hannezo, which is one means by which a duty to disclose may arise.

*12 The heightened pleading standard of Rule 9(b) governs fraud allegations not brought under federal securities law. This standard, although not identical to the standard prescribed by the PSLRA for allegations of fraudulent misrepresentations or omissions brought pursuant to Rule 10b-5, is at least similar to and may be less stringent than the latter. For substantially the same reasons that the Court found that plaintiffs' Section 10(b) claims survive defendants' motions to dismiss, the common-law fraud claims go forward as well.

*C. Unjust Enrichment*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:06-cv-02943-CM  Document 44-2  Filed 04/27/2007  Page 11 of 12

Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 2004 WL 876050 (S.D.N.Y.), Fed. Sec. L. Rep. P 92,821  
(Cite as: Not Reported in F.Supp.2d)

Page 11

Plaintiffs allege that through their conduct, the defendants were enriched at the plaintiffs' expense, and that circumstances are such that equity and good conscience require defendant to make restitution. These allegations amount to bare pleadings of the elements of unjust enrichment. N.Y. Juris. Contracts § 518. Ordinarily, conclusory allegations are not sufficient to make out a claim of unjust enrichment. *See Mina Inv. Holdings, Ltd. v. Lefkowitz,* 51 F.Supp.2d 486, 490 (S.D.N.Y.1999) (finding unjust enrichment not pled when complaint "fails to provide any explanation of the nature of [defendant's] enrichment, how that enrichment was or is at the real expense of Plaintiffs, and why good conscience requires that [defendant] make restitution"). While plaintiffs have not explicitly linked the factual allegations in the complaint to their unjust enrichment claim, however, the Court finds that the complaint alleges sufficient facts that, if true, would support a claim of restitution under an unjust enrichment theory.

Defendants contend that unjust enrichment, which proceeds on a quasi-contract theory, is inappropriate when a valid contract exists between the parties. This court has held, however, that the quasi-contract remedy of unjust enrichment may be alleged alongside breach of contract claims when the validity of the contract is called into question (*Net2Globe Int'l, Inc. v. Time Warner Telecom of New York,* 273 F.Supp.2d 436, 466 (S.D.N.Y.2003) (citing cases). Because the Merger Agreement could be voided if, for instance, plaintiffs are able to prove that they were induced to enter into the agreement by defendants' fraud, quasi-contractual relief may be appropriate. *Niagara Mohawk Power Corp. v. Freed,* 265 A.D.2d 938, 939, 696 N.Y.S.2d 600, 603 (4th Dep't 1999); *see also Ox v. Union Cent. Life Ins. Co.,* No. 94 Civ. 4754(RWS), 1995 WL 634991, at *6 (S.D.N.Y. Oct. 27, 1995) ("[A]s long as a factual issue remains as to the fraud claim, recovery under a theory of unjust enrichment may be proper, even in the presence of an alternative breach of contract claim."). This claim therefore may not be dismissed.

*D. Negligent Misrepresentation*

Plaintiffs claim that when Liberty Media entered into the Merger Agreement with Vivendi, privity of contract and a "special relationship" were created that gave rise to a duty on the part of defendants to give correct information, which was violated by defendants' negligent misrepresentation of Vivendi's financial condition before the execution of the Merger Agreement. Plaintiffs allege that they reasonably relied on defendants' negligent representation to their detriment.

*13 "To succeed on a claim of negligent misrepresentation, a plaintiff must first establish that a defendant has a duty to give correct information to the plaintiff. A plaintiff must then show that the defendant knew: (1) that the information was desired by plaintiff for a serious purpose, (2) that the *plaintiff* intended to rely and act upon it, and (3) that, if false or erroneous, he or she would because of it be injured in person or property." *King v. Crossland Sav. Bank,* 111 F.3d 251, 257-58 (2d Cir.1997) (citations omitted) (emphasis in original). In pleading negligent misrepresentation, a plaintiff in federal court must satisfy the pleading standards of Rule 9(b). *Siemens Westinghouse Power Corp. v. Dick Corp.,* 299 F.Supp.2d 242, 246 (S.D.N.Y.2004) (citing *Marcus v. Frome,* 275 F.Supp.2d 496, 503 (S.D.N.Y.2003)).

Defendants contend that this claim may not be maintained because plaintiffs cannot show that a "special relationship" giving rise to a duty exists between two sophisticated arm's-length parties to a contract. A special relationship is found where "the parties' relationship suggests a closer degree of trust and reliance than of the ordinary buyer and seller." *Coolite Corp. v. American Cyanamid Co.,* 52 A.D.2d 486, 488, 384 N.Y.S.2d 808, 811 (1st Dep't 1976). Yet this court has observed that determining whether a special relationship exists ordinarily requires a fact-intensive, case-by-case inquiry, *Polycast Technology Corp. v. Uniroyal, Inc.,* No. 87 Civ. 3297(JMW), 1988 WL 96586, at *11-12 (S.D.N.Y. August 31, 1988), and that "once basic facts suggesting that a special relationship may exist have been plead [sic]," courts should be reluctant to dismiss a negligent representation claim even when the parties are arm's length contract partners. *Grupo Sistemas Integrales de Telecomunicacion S.A. de C.V. v. AT & T Communications, Inc.,* 1996 WL 312535, at *9 (S.D.N.Y.1996). When a complaint involves "corporate acquisitions

Case 1:06-cv-02943-CM    Document 44-2    Filed 04/27/2007    Page 12 of 12

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 876050 (S.D.N.Y.), Fed. Sec. L. Rep. P 92,821
(Cite as: Not Reported in F.Supp.2d)

Page 12

involving lengthy negotiations," as this one does, the pleadings have often been found sufficient to support a negligent misrepresentation claim. *See DIMON Inc. v. Folium, Inc.*, 48 F.Supp.2d 359, 373 (S.D.N.Y.1999) (citing cases).

Defendants also argue that the existence of a merger clause precludes a negligent misrepresentation claim as a matter of law. Yet the New York authority relied upon by defendants indicates that merger clauses preclude negligent misrepresentation claims only as to extra-contractual misrepresentations. *Chase Manhattan Bank v. Edwards*, 450 N.Y.S.2d 76, 78 (3d Dep't 1982) ("Where, as here, the very instrument that creates the required 'relation of duty' expressly provides that neither party is relying upon representations or statements not contained in the contract, there can be no cause of action based on negligent statements of promises allegedly made before the contract was executed."), *aff'd* 451 N.E.2d 486 (N.Y.1983). Whether a particular merger agreement bars a negligent misrepresentation claim must be determined on a case-by-case basis. *See Simms v. Biondo*, 816 F.Supp. 814, 823 (E.D.N.Y.1993) (finding on a motion for summary judgment that *"[t]his* 'merger' clause bars a claim for negligent misrepresentation as a matter of law") (emphasis added). Because the Court found sufficient grounds for sustaining plaintiffs' federal and common-law fraud claims based on warranties and representations embraced by the merger clause of the Merger Agreement, there is likewise a sufficient basis in the pleadings for plaintiffs to go forward with their negligent misrepresentation claims grounded in the same representations.

## CONCLUSION

*14 For the foregoing reasons, the Court GRANTS defendants' motions to dismiss plaintiffs' Section 10(b) claims as to alleged omissions regarding Vivendi's sale of put options to banks and its share repurchase program, and DENIES the motions in all other respects.

SO ORDERED.

S.D.N.Y.,2004.
In re Vivendi Universal, S.A.

Not Reported in F.Supp.2d, 2004 WL 876050 (S.D.N.Y.), Fed. Sec. L. Rep. P 92,821

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.